542. GEM KNITTING MILLS v. EMPIRE PRINTING AND
BOX COMPANY.

1. The damages which can be recouped are those only which flow directly
from the identical contract which was breached. Where there is evidence
of several distinct contracts of sale between the parties, a buyer who is
defendant in an action, though damaged by delay in the shipment of
one purchase, can not recoup such damages against the purchase-price
of a second purchase obtained by means of a distinct contract. If sev-
eral shipments of the same article, purchased under the terms of a
single contract, are made, the buyer can recoup for damage caused by
delay in any one of the shipments; but the question whether the contract
was an entire contract within which all of the shipments were included,
or whether each order for goods accepted represented a separate con-
tract of purchase, is one of fact for the jury.

2. While sickness or other providential cause may excuse the breach of a
contract, this will not be the case if the promisor, by the exercise of
ordinary care and prudence, could have foreseen and avoided the results
which were afterwards due to providential intervention.

3. In a suit to recover the value of articles sold and delivered under a
contract of sale, where the defendant admits the receipt of the goods and
the correctness of the price, a prima facie case is made for the plaintiff,.
the burden is shifted, and it devolves upon the defendant to establish
a plea of recoupment filed by him, by the preponderance of evidence

Certiorari, from Pike superior court—Judge Reagan. April 29,
1907.

Argued October 23, 1907.—Decided February 24, 1908.

Wilson, Bennett & Lambdin, for plaintiff in error.

E. A. Stephens, contra.

RUSSELL, J. The Empire Printing and Box Company sued the
Gem Knitting Mills on an open account for boxes furnished. The
defendant admitted that it received the boxes at the prices named.
In its answer, however, the knitting mills set up as a defense, and
as matter of recoupment, that the boxes were not delivered accord-
ing to contract, and that there was unreasonable delay in delivery;
that by reason of this delay it could not ship its goods from its
mills, and that a large quantity thereof deteriorated in value and
were damaged. The defendant, therefore, prayed a judgment in
its favor against the plaintiff for the excess in amount of the dam-
ages it had suffered over and above the plaintiff's account. The
jury found against the defendant's pleas, and rendered a verdict
in favor of the plaintiff for $331.20, the full amount for which it

sued. Thereupon, the Knitting Mills sued out a certiorari to the superior court of Pike county. The judge of the superior court overruled the certiorari; and exception is taken to his judgment. Various assignments of error were presented in the petition for certiorari; and several of them would have been meritorious if it were undisputed that a general contract was made for a specified number of boxes and for a certain season's output of a knitting mill, as contended by the plaintiff in error, or if the evidence had demanded a finding that there was such general contract between the parties. If it appeared, without contradiction, that such general contract was entered into between the parties, we might hold that the judge of the superior court erred in overruling the certiorari. The pivotal point in the case, however, is whether the contract for the sale of the boxes in question, and upon which the suit was brought, was included in a general contract, or whether the boxes for which the suit was brought represented a special contract for the sale of a particular lot of boxes.

Upon examination of the charge of the judge of the trial court upon this subject, we find that the jury were very clearly and fairly instructed upon this subject. If the evidence authorized the jury to find (without their finding upon that subject being in any wise contributed to by any error of the court) that there was *no* general contract, and that each particular order for boxes, accepted by the plaintiff and shipped by it to the defendant, and specially that the boxes for the price of which the plaintiff brought its action were the subject of a separate and distinct contract of sale, the finding of the jury could not have been otherwise than the verdict rendered; for the evidence is undisputed that the boxes, by reason of whose delay in shipment the defendant had been damaged, had been paid for; and of course, if the boxes sued for in the present case were shipped under a separate contract and the damages did not flow directly from a breach of this particular contract, there could be no recoupment in favor of the defendant. "Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under *the same contract.*" Civil Code, §3756. If (as the jury were authorized the find) there were several contracts between the parties instead of one, then the defend-

ant could only recoup for damages arising from the breach from which its damages directly flowed. And as it plainly appears from the evidence, without contradiction, that the contract (if the jury found that there were distinct contracts) which the defendant claimed to be breached had been fully executed by payment by the defendant, and was not the contract upon which the action was based, the verdict was right, and the judgment of the judge of the superior court in overruling the certiorari was right.

We can not come to any other conclusion than that the jury took this view of the evidence; because the issue was distinctly, and with great fulness, submitted to them by the judge, as one which they must settle, whether the contract of sale upon which the plaintiff's action was predicated was part of a general contract for a season's supply of boxes, or whether each order given by the defendant to the plaintiff, and accepted and shipped by it, was a separate contract of sale; and the evidence that the latter was true was ample to support this instruction and their finding. Especially is this true as to the early correspondence between the parties (which, however, was subsequent to the date on which the defendant contends that a general contract for a season's supply of 25,000 boxes was made). The defendant contends that the entire single contract was made in December, 1903. The jury, however, may have been inclined to prefer the testimony of the plaintiff (that there was no such contract and that each order, followed by acceptance and delivery of the goods, was a separate and distinct contract of sale), by such expressions as the following, used in the letter accompanying the order of defendant of date of December 29, 1903, "Advise us when you can ship, and' *quote us prices.*" Nor was there any claim that there was a contract for an entire season's supply of boxes, when the defendant replied to the letter of the plaintiff of January 19, 1904, in which the plaintiff, acknowledging the receipt of an order dated January 16, 1904, used the following language: "It is very evident, from the orders you are sending us, that you intend giving us your business in future, as our boxes no doubt are pleasing you. Such being the case, we are going to take the liberty of asking that you give us a statement," etc. It would seem that in replying to this letter, as the defendant did by letter dated January 20, 1904, attention should have been called to the fact that a contract was

already existing between the parties for a season's supply of boxes. A lengthy correspondence between the parties was put in evidence, much of it relating to the statement of the defendant's financial condition, which had been requested by the plaintiff, and to the failure of the defendant to meet its bills promptly, and in the letter of March 3, 1904, the defendant uses this language, "Ship these boxes as soon as you possibly can, and in ten days from the receipt of the goods you shall have check for all that we owe. Complete *the orders* that you have accepted; and if you have any doubt about getting your money, you may send them with B/L attached, and then if you do not want our business, we will not trouble you with any of our orders." There is no intimation of any counterclaim, until after the receipt of the last boxes by the defendant.

We can not say that the jury erred in reconciling the apparent discrepancy (due to the liability of the human mind to forget, and the consequent unreliability of human recollection), by appealing to the immutable record of the understanding of the parties as preserved in their letters. The jury, too, may have considered it a circumstance of some importance that only 17,000 boxes in all were ever ordered by the defendant or appeared to have been required by it, and that no need was shown for the remainder of the 25,000 boxes, nor any demand for the remainder of the 25,000 boxes ever made by the defendant. If, however, the several orders and shipments of boxes be treated as constituting only one contract, we think the verdict would still be authorized, because the evidence is undisputed that the subsequent conditions with reference to making a financial statement and prompt payment were agreed to by the Knitting Mills. By the consent of both parties these conditions thus became engrafted upon the contract, and the plaintiff was authorized to withhold further shipments, as it did, until a satisfactory financial statement was rendered and until payments were made. Furthermore, we do not think that the jury erred in declining to allow damages for the delay in the shipment of the boxes which were delayed, if they saw proper to do so. There was no evidence that the defendant company could not buy boxes elsewhere than from the plaintiff, and that they were compelled to wait upon the plaintiff for the boxes, to the depreciation of their entire stock of goods, simply because the plaintiff

had failed to comply with its contract. It was at least the duty of the defendant to use reasonable means for its own protection, and also to diminish the damages due it by plaintiff.

Having clearly pointed out to the jury the difference in probable effect between a finding that there was only one contract of sale between the parties, and a finding that there was more than one, the court did not err in his instructions, as complained of in the 4th, 5th, and 6th exceptions contained in the petition for certiorari, upon the subject of providential delay. The charges requested were properly presented in the court's own language, and the qualifications to the requests and the omissions therefrom were proper. The court's instructions upon this subject are as follows: "If you believe, from the evidence, that there was a specific time fixed by the contract for the delivery of the goods in question, I charge you that the plaintiff is bound by it, unless they were prevented by some unavoidable providential cause. If you shall find from the evidence that no specific time was fixed by the contract for the delivery of the goods, then the law would require that they be delivered in a reasonable time. What is reasonable time is a question for the jury, which must be determined in the light of all the evidence and the facts and surrounding circumstances. What might be reasonable time under one set of circumstances might not be reasonable time under other circumstances. In other words, it is for the jury to say what is reasonable time under all the evidence in the case, and all the attendant circumstances surrounding the parties at the time. In determining this question you may consider the question of sickness, if such be shown, or any unavoidable circumstance in the case, in making up your mind as to what was reasonable time. I charge you further that an impossibility of performance of a contract can not be urged as a defense or an excuse, when the impossibility might have been avoided by the promisor, by the exercise of ordinary care and diligence." We think that this instruction presented to the jury the rules of the law applicable to the subject of delay in shipment by the vendor of articles sold and to be delivered to the purchaser. In such a case the seller is bound to deliver in a reasonable time, and liable for the damage if he does not so deliver. What is a reasonable time must be determined by the jury, according to the facts and

circumstances of the particular case. The delay may be excused if it were occasioned by unavoidable providential cause, which rendered an earlier delivery impossible, only when the impossibility of delivery and consequent delay could not have been avoided by the exercise of ordinary care and diligence on the part of him who promised to deliver.

Nor did the court err as to the burden of proof. The defendant, having admitted the delivery to it of all of the boxes embraced in the account upon which the suit was brought, and that the contract price was correctly stated, it necessarily devolved upon the defendant to establish its claim for damages under the plea of recoupment, by the preponderance of evidence. The defendant having admitted, at the outset of the case, that the plaintiff had delivered all of the boxes which were the subject-matter of its suit, and that the price was correctly stated by the plaintiff in its petition, the court did not err in instructing the jury as he did that the burden of proof was upon the defendant to satisfy the jury, by the preponderance of the evidence, that it had been damaged, and that the extent of the damage it had suffered must be likewise established. The defendant assumed this burden when it admitted a prima facie case.

In our opinion the verdict was authorized by the evidence; and no error of such importance as to warrant the grant of a new trial was committed by the trial judge; and consequently the judgment of the judge of the superior court in dismissing the certiorari must be                                          *Affirmed.*