THE BIRMINGHAM LUMBER COMPANY *v.* BRINSON & SON.

1. Where a motion to rule out evidence is too broad, comprehending both admissible and inadmissible evidence given by the witness named, and not distinguishing the one from the other, the motion should be denied.

2. The court may decline to rule out inadmissible evidence after it has been received without objection in response to a question propounded by the party making the motion.

3. One who, on the parol request of another, purchased in the market and paid for checks issued and signed by a third person, may recover on account what the checks cost him, as money laid out and expended for the other's use, but the checks thus acquired should be delivered or tendered in due time to the party for whom they were purchased, and if this was omitted, they should be produced and surrendered at the trial, or it should at least appear that they are held subject to the owner's order.

4. Where one, in authorizing a merchant to furnish goods to a third person and charge the same to the account of the person giving the authority, stipulates with the merchant that the latter is to notify him when the account in each month reaches a certain sum, such notice must be given conformably to the stipulation, or there will be no liability on the account for more than that sum in any one month.

5. In order to prove a book account without introducing the books or accounting for their non-production, it is requisite that the evidence shall establish the correctness of the account irrespective of knowledge acquired by witnesses from the books, inasmuch as the books themselves, when properly authenticated as correct, are

the primary evidence, and information derived from them is only
secondary.                                      *Judgment reversed.*

April 23, 1894.   Argued at the last term.

Action on account.    Before Judge BOWER.    Decatur
superior court.    May term, 1893.

Brinson & Son sued the Birmingham Lumber Com-
pany on an account, the items of which extended from
July 23, 1890, to October 7, 1890, for $427.50 principal,
according to one recital in the bill of exceptions.    In an-
other place it appears that the account sued on was for
merchandise to the amount of $341.24, and for trade
checks amounting to $397.95, and was credited by
checks of the defendant, $150 and $156.    It was made
out against the Birmingham Lumber Co., for Thomas
Wilson.    The jury found for the plaintiff $399.64 prin-
cipal, and $66.10 interest to judgment, May 11, 1893.
The defendant's motion for a new trial was overruled,
and exception was taken.    The evidence was directly
conflicting.    It appears that Thomas Wilson was en-
gaged in sawing and shipping lumber to the defendant,
and that the merchandise was furnished to him, and the
trade-checks were issued by him in payment of wages
due employees of the saw-mill.    According to the plain-
tiffs' contention, the merchandise was furnished by di-
rection of the vice-president of defendant; the most
of the checks were taken in payment for goods sold to
the holders (except $55 worth, and a few more the
amount of which does not clearly appear, which were
bought up by the plaintiffs from other merchants who
had taken them), there being an agreement with said
vice-president that this should be done, the defendant
to have a certain percentage of discount from the face
value of the checks.    The defendant contended that
there was no such agreement; and that under the vice-
president's instructions to the plaintiffs in regard to
furnishing merchandise to Wilson, the amount furnished

was to be $150 per month, and when that amount was reached the defendant was to be notified by plaintiffs, and any further credit on this account was to depend on defendant's authorizing it if Wilson's business with defendant would warrant further extension.

The motion for a new trial alleged, in addition to the general grounds, that the court erred:

1. In overruling defendant's motion to rule out S. Brinson's evidence as to the justness of the account, and grant a nonsuit; it appearing that his evidence was based solely upon his books and not upon his own recollection, and the books not being produced or accounted for.

2. In overruling defendant's motion to rule out S. Brinson's evidence stating that "Mr. Wilson saw the account on books, and knew the Birmingham Lumber Co. charged it up to him," Wilson being dead, and the books being the highest evidence of what appeared upon them. (The reason for this ruling was, that this evidence was an answer to a question asked by defendant's counsel themselves.)

3. In charging the jury that if plaintiff "had express authority to go out and buy those checks, whether the defendant was to get 5 or 7 per cent., or any other per cent., and the plaintiff went out and paid his money for those checks, then he would be entitled to recover of the defendant whatever he paid for those checks, less whatever per cent. the defendant was to get."

TOWNSEND & WESTMORELAND and D. A. RUSSELL, for plaintiff in error. DONALSON & HAWES, contra.

