## 5431. BETTS COMPANY v. MIMS.

In a suit for damages on account of the breach of a logging contract which the defendant prevented the plaintiff from carrying out to completion, the gross amount the plaintiff would have earned had he been allowed to continue in the performance of the contract, less such part of the necessary expense of performance as was saved to him by reason of his not being required to perform, would furnish the basis for a calculation of his damages. The amount to be deducted in this case should be ascertained from a consideration of the facts, and after taking into consideration the duty resting upon the plaintiff to diminish the damages as far as possible by utilizing the teams purchased by the plaintiff to carry out the logging contract in any available work or by selling them to the best advantage and as suggested by economy. The verdict should represent the natural net loss to the plaintiff. *Mims* v. *Betts Company*, 9 *Ga. App.* 718-721 (72 S. E. 271).

DECIDED JULY 21, 1914.

Action for damages; from city court of Ashburn—Judge Tipton. December 23, 1913.

Mims sued the Betts Company for damages in the sum of $5,750, on account of the alleged breach of a logging contract between himself and the defendant, entered into on January 1, 1908, by which it was agreed that he would cut and haul logs for the defendant, and place them on the line of a certain tramroad, using for that purpose as many teams as he might be able to purchase, not exceeding seven. According to his contention this contract was to continue through the year 1908 and up to January, 1, 1909, and in pursuance of it he bought five teams and worked them until June 1, 1908, when the defendant refused to allow him to continue hauling. He alleged that if he had been allowed to perform his contract he would have cut, hauled and placed on the tramroad 300,000 feet of logs per month, which at the contract price of $3.50 per thousand, would have made the sum of $1,050 per month, or $7,350 during the seven months between June 1, 1908, when he was compelled to abandon his undertaking, and January 1, 1909; that the necessary expenses he would have incurred in cutting, hauling, and placing the logs on said tramroad in accordance with the contract would have aggregated $500 per month, or $3,500 for the seven months from June 1, 1908, to January 1, 1909, and that after deducting this amount from the gross sum of $7,350 which he would have earned as aforesaid, there would have been left $3,850 as a net profit to him; that he bought the five teams at a cost of

$2,800, solely for the purpose of carrying out his contract during the year 1908; that he was unable, when he and his teams were thrown out of employment, to get other employment for himself and the teams, and it was too late in the year for him to begin farming, so that he was compelled, in order to preserve and care for his mules and oxen, to buy feed for them until he could sell them, and he was unable to sell them until he had expended for such feed $400; and that he was finally obliged to sell the teams at a loss of $1,500, and did sell some of them to the defendant for less than their cost to himself, to avoid greater loss and damage from keeping and feeding. An amendment to the petition set out the expenditures for feeding and caring for the teams, incurred after June 1, 1908, and during the remainder of that year, and specifically set forth the various amounts the plaintiff had paid for the several teams, and the amount lost on the sale of each, and the dates when the sales were effected, all of the sales being made during the fall of 1908 and in the early part of 1909. A general demurrer to the petition was sustained, and that judgment was reversed by this court. 9 *Ga. App.* 718.

Afterwards, in an effort to comply with suggestions made by this court, the plaintiff filed an amendment changing from $400 to $654.50 the sum alleged to have been expended in feeding the teams, and alleging how, when, and to whom the various teams were sold, the amount of loss incurred thereby on each team, and the efforts made by the plaintiff to rent or sell them separately and singly or otherwise, and to obtain employment for himself, and setting out definitely the number of days the teams were fed, and the cost thereof, and declaring that the best possible prices that could be obtained for the teams at the various times they were sold were actually obtained by him.

The trial resulted in a verdict in favor of the plaintiff for $1,715.84. The defendant excepted to the refusal of a new trial.

*John B. Hutcheson, J. H. Tipton,* for plaintiff in error.

*J. A. Comer, Ashburn, Crum & Jones, Perry, Foy & Monk, Tison & Bell,* contra.

WADE, J. (After stating the foregoing facts.) The first three grounds of the motion for a new trial are the usual general grounds, and require no extended comment, as there was ample evidence to sustain the verdict. The fourth ground objects to a long extract

from the charge of the court, consisting of code-section 4395, of several paragraphs stating the contentions of the plaintiff, and of the following instructions: "If you believe that the plaintiff is entitled to recover, and in an effort to mitigate the damages did sell a number of teams for a less amount than the teams would have been worth at the expiration of the contract, then the defendant would be liable to the plaintiff for the difference, if any, of the value of the teams so sold at the time fixed for the expiration of the contract and the time of the actual sale of the same; provided you believe that the plaintiff, in making the sale, was under the expense of the care and feeding of the teams, and got the highest price obtainable." "Plaintiff claims that several of the teams he could not sell, and he was forced to the expense of feeding and caring for said teams from the breach of the contract until the time the contract would have expired." "If you believe, from all the evidence submitted to you in this case, that the plaintiff is entitled to recover, and that the plaintiff, after the breach of the contract, used care and diligence to lessen the damages caused by the breach (if you believe there was a breach of the contract), by trying to sell the teams or procuring work for them, and failed to do so, and was forced to feed and maintain such teams, he would be entitled to recover the actual cost of the feed and the maintenance of such teams until the date of the expiration of the agreement between the parties."

This latter excerpt from the charge of the court is objected to for the following reasons: (1) "Because the same is contrary to law upon its face." This assignment of error can not be considered, since it makes no attempt to show how or in what manner the charge is contrary to law. (2) "Because the same instructs the jury to the effect that the plaintiff, if entitled to recover at all, was entitled to recover the amount that he would have earned from the date of the alleged breach of the contract to the date of its expiration, less expenses of carrying out the contract, and also the difference between the amount received upon the sale of the teams and the amount the same would have been worth at the expiration of the contract, and also the cost of feeding and taking care of the teams pending an effort to sell them." The movant insists that the plaintiff could in no event "recover more than his net earnings from the date of the alleged breach to the date that he claimed the

contract expired." This objection is not well founded, in view of the decision heretofore rendered by this court, mentioned supra, in which the court said: "If by the exercise of ordinary care and diligence the plaintiff could have employed his teams profitably in other work, it was his duty to do so. But it was alleged that when the breach occurred it was a time of the year when other work was not available. The plaintiff was confronted with the proposition as to whether it would be more economical to keep the teams and continue to feed them until work could be obtained, or to dispose of them at a loss. It was his duty to act under the circumstances as an ordinarily prudent man would have acted. He alleges that it was more economical to sell them. If so, the loss thus incurred is an element which may properly enter into the calculation of damages." From this and from what follows in the same opinion, it is clear that this objection to the charge of the court is not well founded. (3) It is complained that the instructions were mixed and confusing; but the movant failed to set out in what way or manner the charge lacked clearness; and, taking into consideration the complicated nature of the action, it appears to us that the instructions of the court were perhaps as clear as the nature of the case permitted. (4) It is objected that the instructions were not consistent with the rule laid down in the former decision by this court (9 *Ga. App.* 718, 72 S. E. 271). We take the contrary view, and see no material variance between the rule heretofore enunciated by this court, and the measure of damages suggested by the trial judge.

The fifth special ground of the motion for a new trial complains that "the court failed to instruct the jury, as to the contract and legal measure of damages to apply in this case, in the event the jury determined that the plaintiff should recover." In the sixth special ground it is complained that the court failed to give the jury proper and legal instructions to "guide them in determining the amount of the net earnings" that the plaintiff would be entitled to recover, etc. In the seventh special ground it is contended that the court failed to give the jury proper and legal instructions "to guide them in determining the amount to be deducted from the amount of net earnings to be recovered by the plaintiff," etc. It does not appear that any timely written request for a fuller or more specific charge than that given by the court

was made at the trial, nor does it appear, from these last three exceptions, wherein the court failed to properly instruct the jury or charge the law; and since no specific assignments of error are therein made, we can not know why the charge was considered insufficient, especially since the charge as a whole appears to cover all of the material contentions of the parties.

In the eighth ground of the motion for a new trial it is complained that the court erred in charging the jury therein set out, but it is not stated how or in what manner the court so erred; and therefore, as has been often ruled, the assignment of error can not be considered. The same may be said of the ninth and tenth special grounds of the motion for a new trial. What the movant may have had in mind, or for what reason the movant objected to the charge complained of in the eighth, ninth, and tenth special grounds of the motion, it is impossible for this court to determine from anything that is set out and declared in these grounds themselves; and since it is neither proper nor admissible for this court to analyze, weigh, and measure excerpts from the charge of a trial judge, in order to discover a possible error not specifically and directly singled out and complained of by a bill of exceptions or a motion for a new trial (as the case may be), and since the charge as a whole seems to have fairly and impartially stated the various contentions of the parties, we can not give consideration to these exceptions.          *Judgment affirmed.   Roan, J., absent.*