### 8226.  CONSOLIDATED PHOSPHATE COMPANY v. STURTEVANT COMPANY.

1. "Mere notice by a third party of his claim that an article purchased infringes a patent owned by him is not of itself an eviction of the purchaser, so as to show a breach of the seller's implied warranty of a right to use."

2. "The current profits of a going manufacturing concern are, as a general rule, too uncertain to form the basis of an award of damages for breach of contract affecting the operation of the plant."

3. No error is committed in admitting evidence offered and objected to as a whole, where parts of it are clearly admissible.

4. Where the charge correctly submits to the jury all the issues in a case, if any fuller charge is desired it should be invoked by a timely written request.

5. While a plea of total failure of consideration includes a plea of partial failure of consideration, yet when, as in this case, the jury are not given any data from which they could reduce the full amount of the

contract price, a charge on partial failure of consideration would be unauthorized.

DECIDED JULY 5, 1917.

Complaint; from Laurens superior court—Judge Kent. February 16, 1916.

*Edmund H. Parry, J. S. Adams,* for plaintiff in error.

*Larsen & Crockett,* contra.

BLOODWORTH, J.   B. F. Sturtevant Company brought suit against the Consolidated Phosphate Company for $650, on open account, for one No. 9 Regulus Metal Exhauster. Defendant filed a plea, and at different times filed three amendments thereto. For convenience, we will designate these amendments in the order of their dates, as pleas 2, 3, and 4. The original plea denied the paragraphs of plaintiff's petition in which it was alleged that the defendant was indebted to plaintiff, and, in addition, there was a paragraph as follows:  "That it is in no wise indebted to the plaintiff in any sum whatever." The fourth plea was an itemized statement of certain amounts which defendant alleged "It was necessary to expend in installing said exhauster, and which amount they have lost in consequence of the imperfect manufacture of said exhauster." There was no demurrer or other objection to the original or to the fourth plea. All of the second plea was stricken on demurrer. On motion of the plaintiff paragraphs 10 and 11 of the third plea were stricken. The case then proceeded to trial, and resulted in a verdict for plaintiff for $650 principal and $227.50 interest. Defendant made a motion for a new trial, which was overruled, and the case is here on exceptions to this ruling.

1. By the second plea the defendant sought to avoid liability because the contract entered into between plaintiff and defendant had in it the following clause:  "The seller guarantees to us that the items covered in this purchase order do not constitute an infringement of any patent rights not owned or controlled by him; and the seller further agrees, that if any suit, action, or the like, for alleged infringement, is instituted by any third party against us on account of any items included in this order, that it will defend any and all such suits, etc., and protect us and save us harmless against any and all damages or expense on account of or incident to any litigation that may be instituted in connection with the purchase by us of any items included in this order. Unless

otherwise agreed by us in writing, the terms, conditions, etc., named in this order covering items purchased, will govern in settlement for same. In this plea it was alleged, that, "after said machine had been delivered by the plaintiff at the plant of the defendant, it (the defendant) received notice in writing from the Pratt Engineering & Machine Company, a corporation, of Atlanta, Georgia, advising the defendant that the said machine delivered at its plant by the plaintiff, as aforementioned, is an infringement of a patent owned and controlled by said Pratt Engineering & Machine Company;" and it was alleged that the defendant was misled and deceived by plaintiff, and that "the plaintiff has placed the defendant in the position of having hereafter to defend a suit for infringement for use by the defendant of the machine delivered to it by the plaintiff." This plea nowhere alleged that any suit had been begun or was threatened against defendant by the Pratt Engineering & Machine Company, or that the plaintiff was insolvent and not able to protect it under the special guaranty contract above quoted. The fact that Pratt Engineering & Machine Company had brought suit against plaintiff, and had notified defendant of that fact, would be no defense to the action in the instant case. There must be eviction of the purchaser, or what is equivalent thereto, to defeat the claim of the seller. "Mere notice by a third party of his claim that an article purchased infringes a patent owned by him is not of itself an eviction of the purchaser, so as to show a breach of the seller's implied warranty of a right to use." The Electron, 74 Fed. 689 (5) (21 C. C. A. 12).

2. In paragraphs 10 and 11 of the third plea the defendant alleged that by reason of an explosion it was forced to shut down its mill for ten days; and it asked to be allowed to recover by way of recoupment $100 per day, which it alleged "was the net profit being earned up until the time of the wreckage of said machine, and . . was the net profit which it did earn immediately upon the installation of the machine which it was necessary to install to take the place of the inferior machine which was destroyed and which was purchased from plaintiff." These paragraphs were properly stricken. "The current profits of a going manufacturing concern are, as a general rule, too uncertain to form the basis of an award of damages for breach of contract affecting the operation of the plant." Harper Furniture Co. *v.* Southern Express Co., 148

N. C. 87 (62 S. E. 145, 30 L. R. A. (N. S.) 483, 128 Am. St. R. 588). In *Thornton* v. *Cordell,* 8 *Ga. App.* 588 (70 S. E. 17), it was held: ,"The proper measure of damages chargeable to one who failed to comply with a contract to repair a boiler, by reason of which the owner of the boiler was prevented in whole or in part from operating his ginnery, is the rental value of the ginnery as a whole, or the rental value of such portion of the machinery as the defendant's breach of contract put out of operation. An estimate of probable receipts from the ginnery, based upon the actual receipts for the previous years and the usual charge per bale for ginning, though admissible because illustrative, does not constitute a proper measure, because it does not take into consideration the necessary expense. And damages thus estimated are too remote for recovery, not only because subject to contingencies in the operation of the plant, which can not be foreseen, but also because neither the character of the crop nor the number of bales which may be carried to the particular gin in question can be foreseen, or naturally be supposed to be within the contemplation of the parties when entering the contract." See also *Hall* v. *Case Threshing Machine Co.,* 11 *Ga. App.* 840 (76 S. E. 597). Damages on account of loss of profits in such cases as this are recoverable only where they "can be proved to be directly due to the breach, entirely dependent upon it, and the amount is absolutely fixed and certain, and the damages sought were within the contemplation of the parties." In an action for breach of contract, "the party committing the breach is liable only for such losses as would naturally and probably be in the contemplation of the parties at the time of making the contract." Tompkins Co. *v.* Monticello Oil Co., 153 Fed. 817.

It occurs to us that the striking of these two paragraphs from the plea is amply authorized by sections 4394 and 4395 of the Civil Code of 1910.

3. There was no error in admitting the letter referred to in the first paragraph of the amendment to the motion for a new trial. It was offered as a whole, and parts of it were clearly admissible. *Desverges* v. *Marchant,* 18 *Ga. App.* 249 (2) (89 S. E. 221); *Birmingham Lumber Co.* v. *Brinson,* 94 *Ga.* 517 (20 S. E. 437).

4. The second ground of the amendment to the motion for a new trial complains in a general way of the charge of the court,

but does not point out the alleged errors therein with sufficient definiteness. The charge, according to the statement in this ground, covered, "in a general way, the contentions of the defendant." If more specific instructions were desired, they should have been embodied in a proper written request and presented to the judge before the jury retired. *Mills* v. *Sanders,* 16 *Ga. App.* 298 (2) (85 S. E. 207); *Moultrie Compress Co.* v. *Byrom Cotton Company,* 13 *Ga. App.* 617 (79 S. E. 589); *Smith* v. *Bibb Mfg. Co.,* 112 *Ga.* 680 (37 S. E. 861); *Odum* v. *Rutledge,* 16 *Ga. App.* 350 (3) (85 S. E. 361).

5. The third ground of the amendment to the motion for a new trial complains that the court failed to charge the jury as to the law relating to partial failure of consideration, alleging that "the jury, under the evidence, was authorized to consider the value of the property which was not shipped away, in connection with the plea of total failure of consideration." It is well settled that "a plea of total failure of consideration includes within its terms the defense of partial failure of consideration, but the defendant can have no abatement from the purchase-price on account of a partial failure of consideration, unless he furnishes to the jury sufficient data to enable them to estimate with reasonable certainty the amount of the abatement." *Crouch* v. *Spooner,* 9 *Ga. App.* 695 (72 S. E. 61); *Central of Georgia Ry. Co.* v. *Borland,* 12 *Ga. App.* 729 (78 S. E. 352); *Hornsby* v. *Butts,* 85 *Ga.* 694 (11 S. E. 846); *Morgan* v. *Printup,* 72 *Ga.* 66 (2); *Grier* v. *Enterprise Stone Co.,* 126 *Ga.* 17 (54 S. E. 806). "The rule is, however, that a defendant may plead total failure of consideration, and under it submit proof of partial failure; but if the proof does not establish a total failure, the defendant must then introduce enough proof to show how far the consideration has failed and how much loss has been occasioned by the failure, to justify the jury in fixing upon some definite amount, before there can be any reduction in the verdict from the full sum stated in the note. We do not mean to say that this proof must establish the damage with arithmetical accuracy, but there must be such proof as to furnish a reasonable basis for the action of the jury when it comes to the question of abating the purchase." *Pidcock* v. *Crouch,* 7 *Ga. App.* 302 (66 S. E. 271). In the case of *Myers* v. *Philip Carey Co.,* 17 *Ga. App.* 535 (87 S. E. 825), it is said: "While a plea of total

failure of consideration includes a plea of partial failure of consideration, yet when, as in this case, the jury are not given any data from which they could reduce the full amount of the contract price, a verdict allowing the defendant the benefit of a partial failure of consideration would be unauthorized." *Stimpson Specialty Co.* v. *Parker,* 10 *Ga. App.* 295 (73 S. E. 412); *Clegg-Ray Co.* v. *Indiana Scale & Truck Co.,* 125 *Ga.* 558 (54 S. E. 538); *Hinkle* v. *Burt,* 94 *Ga.* 506 (19 S. E. 828).

To support the plea of total failure of consideration in this suit it would be necessary for the defendant to show that the "Regulus Metal Exhauster" was entirely worthless; and the court would not be authorized to charge partial failure of consideration, in the absence of any data showing that the exhauster, as such, was of some value. After the machinery was torn to pieces, evidence as to the value of a part thereof would not authorize the charge of partial failure of consideration of the entire machine. There is no proof that this exhauster was worth less than the contract price. There was some evidence as to the value of detached parts of it, in the testimony of the president of the Consolidated Phosphate Company, as follows: "This piece that they are claiming was not shipped back was just a stool like which it stood on. It was worth between $25 and $50 I suppose, not over that anyway. I was instructed by the Sturtevant people to return it after the machine was broken." There was some testimony of M. S. Leonard in reference to the value of "the sub-base, pedestal, bearings, pulleys and shafts, and the value of regulus metal," but nothing to indicate that these articles were left in the possession of the Consolidated Phosphate Company. Indeed C. E. Lafrage, who was superintendent of the phosphate plant, testified: "Mr. Bashinski instructed me to pick these parts up and ship the whole business back to the company. I don't remember that we kept any part of it. I think we shipped the whole thing back. I picked up all the parts of it that I could find."

It will thus be seen that there is no sufficient data from which a reduction could be made from the contract price of the exhauster; and there was, therefore, no error in failing to charge on partial failure of consideration.

*Judgment affirmed. Broyles, P. J., and Jenkins, J., concur.*