## UPMAGO LUMBER COMPANY v MONROE & COMPANY.

1. The defendants' answer in the nature of a cross-petition, as finally amended, is to be construed as setting up a demand for damages on account of the breach of the contract, and not as a suit for the recovery of the property. The contract contemplates a sale of the sawmill

outfit, except specified' parts of the machinery to be used therein, and a lease of the tramroad and its equipment.

2. Where the 'lessor in pursuance of the contract furnished a tramroad, engine, locomotive, and cars, and the lessees accepted and used them in their business, a claim for damages by the lessees, based upon the alleged defective condition of the road and its equipment, for alleged profits which the lessees would' have earned in operating the mill if the tramroad and equipment had been in good condition, was too remote and speculative to be the basis for recovery. Civil Code, § 4394; *Willingham* v. *Hooven*, 74 *Ga.* 233 (3), 234 (58 Am. R. 435).

3. Treating the cross-demand as for a breach of the contract, the measure of damages for the alleged breach in taking so much of the sawmill outfit as was owned by the defendants should be upon the basis of the fair market value of that property at the date it was taken, and not for any amount of money that may have been advanced by the defendants for the equipment, maintenance, or improvement of the property. Demands of the character last mentioned were set up in the answer, and the judge erroneously instructed the jury in regard to considering this in determining the amount of damages recoverable by the defendants. The measure of damages applicable as above stated would also apply to the value of buildings and other appurtenances erected by the defendants as a part of the sawmill outfit.

4. The foregoing rulings dispose of the controlling questions so far as properly made; and it is unnecessary to pass upon any other assignment of error presented by the record.

No. 844. FEBRUARY 24, 1919.

Equitable petition. Before Judge Thomas. Thomas superior court. February 2, 1918.

*John P. Knight* and *Clifford E. Hay,* for plaintiff.

*Merrill & Grantham,* for defendants.

ATKINSON, J. Monroe & Company entered into a written contract with the Upmago Lumber Company for the purchase of certain machinery for the equipment of a sawmill to be located and operated at a place accessible to timbered lands of the Upmago Lumber Company, and for the advancement of money necessary to the installation of the plant, agreeing to saw lumber for the Upmago Lumber Company at certain scales of prices. After the mill had been located and operated for more than eight months, a third person, who had advanced supplies to Monroe & Company, foreclosed his lien and caused a levy to be made upon the sawmill property. The Upmago Lumber Company replevied the property, and offered to turn it over to Monroe & Company, and requested that they continue operation of the mill in terms of the contract. On the contention that Monroe & Company declined the offer and voluntarily surrendered the property, and relinquished all of their

rights therein, the Upmago Lumber Company took charge of the mill and operated it. Shortly thereafter the Upmago Lumber Company negotiated a sale to another person; and when the sale was about to be consummated, the members of the firm of Monroe & Company, who had been employed by the Upmago Lumber Company to operate the mill, asserted that they were in possession by their own right, and that the property could not be sold without their consent. The Upmago Lumber Company filed suit to enjoin Monroe & Company from asserting any claim to the property or interfering with the plaintiff's possession, and to recover a balance due on account of moneys advanced to Monroe & Company. The defendants filed an answer, admitting that they had refused to continue to operate the sawmill, alleging that this was because the plaintiff had failed to carry out its contract, and denying that they had yielded their rights to the possession of the property under the contract; and answering further, by allegations in the nature of a cross-petition, among other things, they set up a demand for money supplied by them that went into improvement of the property, and for damages for alleged breach of the contract upon the part of the plaintiff. At an interlocutory hearing the judge granted a temporary injunction as prayed, on condition that the plaintiff execute a bond conditioned to pay any judgment that might be rendered in favor of the defendants on their cross-demand. By amendment to the answer, filed after the plaintiff had given a bond as provided in the order of the judge, the defendants presented a prayer that they have judgment "against plaintiff and against the surety on their bond given in this matter," for a stated amount of money. The plaintiff filed a demurrer to the original answer of the defendants, and renewed the demurrer to the answer as amended. The court overruled the demurrer, and the plaintiff filed exceptions pendente lite. On the final trial the jury rendered a verdict in favor of the grant of an injunction as prayed, and awarding to the defendants a stated sum on their cross-petition. The plaintiff made a motion for new trial, which was overruled. Error was assigned upon the exceptions pendente lite, and upon the judgment refusing a new trial.

The contract, so far as material to be stated, was as follows: "For and in consideration hereinafter named the following agreement is entered into: That the party of the first part (Hugh T.

54

and Fuller Monroe, trading as partners under the firm name of Monroe & Company) agrees to purchase a sawmill outfit which . . includes the sawmill and all fittings, two engines, lath mill, etc., but no boiler, at the price of $1750.00, where it now stands. This mill is to be moved and put up at the company's siding, Fla., or near there, which erection of mill Hugh T. Monroe will supervise. The Upmago Lumber Company will pay the expenses of erecting the mill plant, which will be added to the purchase-price; said Monroe & Company to pay $1000.00 cash and for the balance to execute mortgage on the property and other property, notes bearing interest at 8%, being $150.00 per month notes. Upmago Lumber Co. agrees to furnish one 150-H.-P. boiler and big surfacer machine, the boiler being at Cheraw at present, and the Upmago Lumber Co. will pay the expense of erecting the big machine at the plant in Fla. And the said Monroe & Co. hereby agree to operate the sawmill and saw lumber, cutting the timber economically and loading it on cars of the railroad company that the proposed tramroad connects with, at the following prices: [follows a schedule of prices.]    The timber that Monroe & Co. agree to cut under this contract is all the timber that the Upmago Lumber Co. now owns or may hereafter purchase within one and one quarter miles of the A. C. L. R. R. or the Fla. Central Road, within ten miles of the mill. . . Also the timber Upmago Lumber Co. now owns or may own within one and one quarter miles of proposed tramroad running west from the railroad eleven miles, or all east of the Beachton and Amonia road. Said Monroe & Co. are to stand any rejections of lumber they ship, including freight, which is not in accordance with orders furnished them; they also agree to operate the sizing machine (the machine being owned by the Upmago Lumber Co., the boiler also being owned by the Upmago Lumber Co.). Monroe & Co. . . hereby lease from the Upmago Lumber Co. the tramroad mentioned above, a locomotive and cars to do their logging with . . It is understood and agreed that said Monroe & Co. are to keep the planing-machine, locomotive and cars and boiler, and tramroad in repair, and to return same, after the expiration of this contract, in good running order except ordinary wear and tear. In case either boiler, that is locomotive or sawmill boiler, give out, become useless, when same is not the fault of Monroe & Co., Upmago Lumber Co. will replace

same. . . In the event that said Monroe & Co. can not and do not comply with the terms of this agreement, unless it is caused by an act of Providence, the Upmago Lumber Co., on three days written notice, may take charge of the operations and conduct the same; the intent of this clause being to prevent the operations being tied up indefinitely by sickness, death, or financial troubles. The Upmago Lumber Co. is to build the main line of the tramroad out as far as necessary to handle the timber that the Upmago Lumber Co. now owns. In the event that it is desirable to build spur-tracks from the tramroad, Monroe & Co. are to build same, Upmago furnishing only the rails, spikes, frogs, switches, etc. It is understood and agreed that the timber cut by Monroe & Co. shall be cleaned up to all trees 12″ in diameter at the stump, 18″ from the ground, and all laps that will make a 6x6-12′ or over."

The foregoing statement is sufficient for a clear understanding of the rulings in the headnotes, and these require no further elaboration.

*Judgment reversed. All the Justices concur, except Fish, C. J., disqualified.*