14559, 14560.   FIRESTONE TIRE AND RUBBER CO. *v.*
SHORE; and *vice versa.*

The plaintiff's petition as amended, by which he sought to recover as damages profits alleged to have been lost and expenses alleged to have been incurred because of breach of a contract to sell and deliver to him certain tires and other equipment for a motor-truck used in transporting manufactured products from his sawmill, was subject to the demurrer as to that part of the petition which claimed profits lost on account of decreased operation of the mill.

As to the item claiming as damages the amount expended by the plaintiff in buying a new truck, the demurrer was properly sustained. It does not appear that he did not receive value for the amount expended, or was damaged by the expenditure.

No general or nominal damages being sought, and the alleged items of damages not being recoverable, the court erred in not dismissing the petition.

DECIDED FEBRUARY 23, 1924.

Attachment; from city court of Quitman—Judge Baum. April 9, 1923.

*E. K. Wilcox,* for plaintiff in error in main bill.

*Bennet & Harrell, Branch & Snow,* contra.

JENKINS, P. J. The plaintiff sued for damages consisting of alleged profits lost and expenses incurred on account of the defendant's failure to comply with its contract to sell and deliver to the plaintiff certain tires, wheels, and automobile accessories, for the purpose of re-equipping with pneumatic tires his truck, which had been equipped with solid rubber tires. The amended petition alleged: that in the operation of plaintiff's sawmill it was necessary for this truck to transport the manufactured product a distance

of seven miles to the nearest railroad station; that on account of the sandiness of much of the road the truck had proved inadequate for this purpose; that plaintiff therefore contracted as alleged, with the defendant through its representative, who, at the time was fully informed of the difficulties and conditions and saw the truck at the railroad station; that the contract provided for delivery "at once," and 10 days was a reasonable time therefor; that notwithstanding repeated promises, the defendant failed to make delivery, until finally the plaintiff, after thirty more days, purchased another truck, which could transport his full manufactured product; that he did not previously make such purchase because of his reliance on the defendant's agreement; that during the period preceding this purchase of the new truck he was able to cut and manufacture only one half of the normal output of his mill, on account of having to use his four logging teams to haul the manufactured lumber for a part of the day over the sandy portion of the road, the original truck being unable to come nearer than four miles to the mill; that he "had standing continuous orders for the entire output of the mill during all of said time, and that the only condition which prevented the manufacturing of the lumber to the extent of the entire capacity of the mill" was the condition alleged; that at the time the plaintiff bought the new truck, to do the work which his original truck equipped as contracted for would have done, "there was no one on the market able or willing at that time to furnish the wheels and pneumatic tires and other equipment necessary to convert" the truck into such a vehicle as would do the work required; and that when he bought the second truck "it was the only thing which petitioner could have done to meet the situation and to stop the damage and loss which the plaintiff was suffering by reason of the failure of the defendant to furnish said equipment." He therefore claimed as damages the expense incurred in purchasing the new truck; that is, the difference between the cost of the new truck, after receiving a credit for the exchange of the old truck to the seller, and the contract cost of the tires and equipment agreed to be paid to the defendant; and further, the alleged actual net profits lost by the fifty per cent. inactivity of the mill, the averments being: "that said mill averaged 9,000 feet of manufactured products per day, or 216,000 feet per month, which fact was made known to the said  .  .  agent

of the defendant at the time said contract was made," and "that the net profits to petitioner of said manufactured products at that time was $7 per thousand feet, $1512 per month as a result of the normal output of said mill; and that by reason of the fact that petitioner was able to deliver to the railroad only 50 per cent. of said 216,000 feet per month, actual net profits for the above-mentioned month was only $756, or a loss of $756 to petitioner." By amendment it was shown that this loss arose, not after the lumber had been actually cut, but by reason of the plaintiff's failure to cut the percentage stated, on account of the use of his logging teams for a portion of the day in transporting the manufactured product to the station. The defendant demurred both generally and specially to the petition, both generally and particularly attacking each of the items of damage claimed, as being remote, speculative, not in contemplation of the parties, an improper measure of damages, and demurred to the expense item of buying the new truck, as incurred without any notice or knowledge of the defendant. The trial court sustained the demurrers with reference to the purchase of the new truck, and overruled the others. The defendant, by direct bill, excepts to the overruling of the latter; and the plaintiff, by cross-bill, excepts to the sustaining of the demurrer as to the expense item.

1. "Remote or consequential damages are not allowed whenever they cannot be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." Civil Code (1910), §§ 4394, 4395. "Damages which are the legal and natural result of the act done, though to some extent contingent, are not too remote to be recovered, especially where they are such as may be fairly and reasonably considered as arising either naturally from a breach of the contract itself, or as may reasonably be supposed to have been in contemplation of both the parties at the time they entered into the contract as the probable result of a breach of it." *Stewart* v. *Lanier House Co.,* 75 *Ga.* 582 (1 *a*), 598; *Van Winkle* v. *Wilkins,* 81 *Ga.* 93 (3) (7 S. E. 644, 12 Am. St. R. 299) ; *Gore* v. *Malsby,* 110 *Ga.* 893 (3), 902, 903 (36 S. E. 315) ; *Waycross Air-Line R. Co.* v. *Offerman R. Co.,* 114 *Ga.* 727 (3), 731 (40 S. E. 738) ; *Anderson* v. *Hilton & Dodge*

*Lumber Co.,* 121 *Ga.* 688 (3), 691 (49 S. E. 725) ; *Carolina Portland Cement Co.* v. *Columbia Improvement Co.,* 3 *Ga. App.* 483 (2), 489 (60 S. E. 279) ; *Chappell* v. *Western Ry. of Ala.,* 8 *Ga. App.* 787, 790 (70 S. E. 208) ; Tompkins Co. *v.* Monticello Cotton Oil Co., 153 Fed. 817, 819-821. But parties will not, as a general rule, be held liable for the current profits of a going manufacturing concern, especially where, under the rule stated, they are neither the immediate fruit of the contract itself, nor would reasonably have been anticipated by the parties as naturally flowing from a breach. *Upmago Lumber Co.* v. *Monroe,* 148 *Ga.* 847 (2) (98 S. E. 498) ; *Willingham* v. *Hooven,* 74 *Ga.* 233 (3), 248, 249 (58 Am. R. 435) ; *Ga. R. Co.* v. *Hayden,* 71 *Ga.* 518 (2) (51 Am. R. 274) ; *Consolidated Phosphate Co.* v. *Sturtevant Co.,* 20 *Ga. App.* 474 (2), 476, 477 (93 S. E. 155) ; *Ralph T. Birdsey Co.* v. *Porter,* 18 *Ga. App.* 391 (3) (89 S. E. 435) ; *Albany Phosphate Co.* v. *Hugger,* 4 *Ga. App.* 771 (3), 777, 778 (62 S. E. 533). In this case, irrespective of whether or not the measure of damages claimed was the proper legal measure (see *Thornton* v. *Cordell,* 8 *Ga. App.* 588 (4), 70 S. E. 17) , and whether or not the petition was defective in failing to show that the plaintiff had lessened his damages by the use of ordinary care and diligence, the profits here claimed were not the direct and immediate fruit of the contract, such as can reasonably be considered as having been in the contemplation of the parties when the contract was made. Civil Code (1910), § 4398; *Betts Co.* v. *Mims,* 14 *Ga. App.* 786 (82 S. E. 474) ; *Mims* v. *Betts Co.,* 9 *Ga. App.* 718, 721 (72 S. E. 271) ; *Ansley* v. *Jordan,* 61 *Ga.* 483 (1). When the seller failed to deliver the tires and other equipment contracted for, which it is alleged were necessary for the operation of the purchaser's truck in the business intended, the seller could not have reasonably anticipated that the purchaser would thereupon stop in whole or in part the operations of his sawmill, but rather would have naturally anticipated that other material, in the place of that contracted for, would be purchased, and that the purchaser, as his measure of damages, would charge the seller with the difference between the contract price and the market price at the time and place of delivery.

(*a*) "If there is no market at the place of delivery at the time fixed therefor, resort may be had to the nearest available market, with cost of transportation to the place of delivery usually added."

*Twin City Lumber Co.* v. *Daniels,* 22 *Ga. App.* 578 (2), 582 (96 S. E. 437). If the allegation of the instant petition, that "there was no one on the market able or willing at that time to furnish the wheels and pneumatic tires and other equipment necessary to convert" the plaintiff's truck from one carrying solid tires into one with pneumatic tires, could be taken as alleging that the tires, equipment, and work necessary to fit the same could not have been bought or obtained in any available market, rather than as an averment merely that they were not purchasable on the market at the place of delivery, it still does not appear why the plaintiff purchaser did not use or could not have used other means of transporting his lumber to the railroad station without stopping or lessening his mill operations, or why, if the defendant seller was in fact the only dealer in the equipment, the plaintiff could not have rented a suitable truck, or wagons, logging teams, or other practical method of transportation. The allegation that when the plaintiff bought the new truck "it was the only thing which petitioner could have done to meet the situation and to stop the damage and loss which the plaintiff was suffering by reason of the failure of the defendant to furnish said equipment," as a general averment or conclusion of the pleader, is controverted by the further specific allegation in the petition that the plaintiff was in fact able to transport one half of the product of the mill to the station by using his four logging teams during a portion of the day for that purpose.

(*b*) Under the rules stated, it was error to overrule the demurrers to that portion of the petition which claimed profits lost on account of the decreased operations of the mill.

2. The court properly sustained the demurrer as to the item claiming as damages the amount expended in purchasing the new truck. It appears that the plaintiff acquired this truck as his own property, but it nowhere appears that he did not receive value for the amount expended, or that he incurred any damage in paying the amount of the cost price.

3. Neither of the items of damage claimed being recoverable under the facts alleged, and no general or nominal damages being sought, the petition should have been dismissed. *Twin City Lumber Co.* v. *Daniels,* supra.

*Judgment reversed on main-bill of exceptions; affirmed on cross-bill. Stephens and Bell, JJ., concur.*