32089.   BUCHANAN, receiver, *et al. v.* HIEBER.

Decided December 16, 1948.

*B. D. Murphy*, for plaintiffs.

*Herbert Johnson, Ross Arnold*, for defendant.

TOWNSEND, J. (After stating the foregoing facts.) ■ ■ Paragraph number 11 of the lease contract under which the defendant held the premises provides as follows: "If premises are totally destroyed (or so substantially damaged as to be untenantable) by storm, fire, earthquake, or other casualty, this lease shall terminate as of the date of such destruction or damage, and rental shall be accounted for as between Lessor and Lessee as of that date. If premises are damaged but not rendered wholly untenantable by any such casualty rental shall abate in proportion as the premises have been damaged and Lessor shall restore as speedily as practicable, whereupon full rent shall recommence."

Although special grounds 4, 6, and 8, in dealing with this provision of the lease, complain of certain excerpts from the charge of the court, special ground number 11 complains that the verdict is unsupported by the evidence, and special ground 12 contends that the judgment entered May 10, 1947, which was appealed to the Supreme Court, is stare decisis—these special assignments of error are treated together because they deal with the construction of the latter part of paragraph number 11 of the lease contract. It is insisted by the plaintiffs that, properly construed, this provision of the lease means that the lessee is not entitled to a reduction in the rent in case of damage to the leased premises, except in the proportion that the premises might become untenantable. That is, if the whole space rented by the defendant continued to be occupied by him after the damage, he would be entitled to no reduction in the rent. On the other hand, if a part of the space was untenantable, and therefore not occupied by him after the damage, he would be entitled to a reduction in the rent in proportion to the relation of this untenantable part of the space to the whole rented premises. The defendant contends that this provision of the lease means that, if the rented premises should become damaged in one of

the ways designated but not to such extent but that the lessee might continue to occupy the whole leased premises, the rent should be reduced in proportion to the amount of damages the premises had undergone during the period the premises remained thus damaged. The language in the lease under consideration is as follows: "If premises are damaged, but not rendered wholly untenantable by any such casualty, rental shall abate in proportion as the premises *have been damaged.*" (Italics ours.) Therefore, to give this provision the meaning attributed to it by the plaintiffs would require in effect a change in the wording of the provision so as to make it say, "rental shall abate in proportion to the relation of the untenantable part of the premises to the tenantable part after the damage."

Section 20-704(2) of the Code, in dealing with the construction of contracts, provides: "Words generally bear their usual and common signification." By giving the words of that part of paragraph 11 of the lease contract which we have under consideration their usual and common signification, they mean that, if the leased premises are damaged by fire, or as the direct and proximate result of fire, but not rendered wholly untenantable thereby, the stipulated and agreed rent shall not continue to be paid in the same manner as before the damage, but thereafter and pending restoration of the leased premises, the rental shall abate in proportion to the extent of these damages.

The order of the court of May 10, 1947, contended by the plaintiffs to be the law of the case, in the 12th ground of their amended motion for a new trial, contained a provision as follows: "The facts before the court do not justify a finding that the lessee is entitled to any abatement of rent on account of fire damages to the premises, it appearing that the premises covered by the lease, or any part of same, have not been rendered untenantable or unusable by reason of fire." In *Hieber* v. *Buchanan,* supra, the entire order of the superior court including the foregoing quoted part was excepted to and error assigned thereon as being contrary to law and contrary to the evidence adduced at the hearing and without evidence to support it. This judgment of the trial court, containing the excerpt quoted herein, was reversed by the Supreme Court. The effect of the reversal was to vacate it the same as if it had never been entered.

The construction that the trial court, therefore, placed upon the language of the lease contract now under consideration is not the law of this case.

Special grounds 4, 6, 8, 11, and 12 are without merit.

■ Special ground 5 contends that the trial court erred in charging the jury as follows: "The casualty in this case involved being an alleged fire, which it is contended burned not only the Winecoff Hotel property but certain portions of the same as are covered by the lease contract in question." The plaintiffs contend that this instruction was error, because it was not contended that the space leased by the defendant was actually burned, it appearing by the evidence without dispute that it was not burned by the fire itself, but was damaged by water used to extinguish the flames and by other means directly resulting from the fire. Section 56-816 of the Code provides: "A loss or injury may occur from fire without the actual burning of the articles or property; as, a house blown up to stop a conflagration, or goods removed from imminent danger, or damage by water used to extinguish the flames." The charge was not misleading and constitutes no ground for the reversal of this case.

■ By special ground 7 it is contended that the court erred in charging the jury that, "in passing upon the question of what reduction, if any, the tenant . . would be entitled to . . he would not be entitled to any reduction on account of . . loss of profits attributable *solely* to diminution in the number of guests in the Winecoff Hotel itself." The plaintiffs contend that this excerpt was error, because they say that it in effect instructed the jury that the defendant would be entitled to a reduction on account of loss of profits unless such loss of profits was attributable solely to the diminution in the number of guests in the Winecoff Hotel.

The plaintiffs correctly contend that the defendant is entitled to no reduction in his rent because of loss of sales or profits. However, in the instant case, the defendant had expressly pleaded damage resulting from the lack of guests in the hotel after the fire, and the court was expressly telling the jury that this was not a proper measure of damages. The charge as far as it went stated the law correctly. The plaintiffs did not request fuller and more complete instructions. In *Durand* v. *Grimes*, 18 *Ga.*

693(3), it is said: "It is no objection to a charge that it does not go far enough, provided it states the law correctly as far as it goes." Applying the facts in the instant case to the excerpt of the charge complained of, such excerpt fails to constitute reversible error.

■ Special ground 9 contends that the trial court erred in charging the jury as follows: "As to any alleged temporary wooden structures which the tenant claims were put in front of his building as a result of such fire, if you find that such structures caused damage to the premises rented to him, you may make what you find to be suitable reduction therefor. You would not consider any structures in front of any portion of the Winecoff Hotel not leased to this tenant, however." There was at least some evidence that a wooden structure in front of the building to some extent impaired the ingress and egress of customers seeking to come from the street to the place of business of the defendant. The photographs alone show that. In *City of Rome* v. *Lecroy,* 59 *Ga. App.* 644(2), supra, the following is held: "A person, in the occupancy of premises in the operation of a commercial business, abutting on a street in a city, has an interest in the land during his term of occupancy, and can recover for an injury for such use represented in an injury to his business caused by the act of the city in the maintenance and continuance of an open ditch in the street, alongside the sidewall, which prohibits the ingress and egress of customers, where it is necessary, in the conduct of his business, for such customers to come from the street onto the property in automobiles." The impairment of the ingress and egress of customers, seeking to do business with the defendant, by the erection of a wooden structure along the front of the Winecoff Hotel building, placed there immediately following and as a direct and proximate result of the fire, was a damage embraced in the terms of the lease contract. The last sentence of the charge complained of, which is, "You do not consider any structure in front of any portion of the Winecoff Hotel not leased to this tenant, however," is favorable to the plaintiffs and can not be complained of by them.

■ Since special ground number 10 is but a contention that the verdict is not supported by the evidence, it is treated as an amplification of and considered with the general grounds.

The plaintiffs contend that there is no evidence in the record as to the extent of the damages to the premises of the defendant, upon which the jury could have placed a monetary value and accordingly fixed the reduction in the rent.

The burden of proof was on the defendant to show the amount of rent reduction to which he was entitled, and although the evidence showed damage, it failed to afford the jury sufficient data to enable them to estimate with reasonable certainty the amount of the abatement. *Mechanics Insurance Co. of Phila.* v. *Teat,* 34 *Ga. App.* 361 (3) (129 S. E. 554).

Although the issue of law in the instant case has no relation to the pleas of partial failure of consideration, yet in many respects it may be compared therewith favorably, as they are at least akin to the extent that here, as well as in partial failure of consideration cases, the defendant can have no abatement unless he furnishes the jury sufficient evidence to enable them to estimate with reasonable certainty the amount of the abatement. See *Crouch & Son* v. *Spooner,* 9 *Ga. App.* 695 (72 S. E. 61); *Stimpson Specialty Co.* v. *Parker,* 10 *Ga. App.* 295 (3) (73 S. E. 412); *Consolidated Phosphate Co.* v. *Sturtevant Co.,* 20 *Ga. App.* 474 (5) (93 S. E. 155). There being no evidence in the record to support the amount of the verdict, the general grounds of the motion for a new trial in the instant case are sufficient. See *Roddenberry Hardware Co.* v. *Merritt,* 17 *Ga. App.* 425 (4), supra.

The trial court erred in overruling the plaintiffs' motion for a new trial as amended for the reasons set forth in the 5th headnote and this division of the opinion.

It was the opinion of the majority of the judges of the division of this court to which this case was assigned that it should be passed upon by the two divisions sitting as one court, and, a majority of the two divisions sitting as one court having decided that the questions involved should be decided by the two divisions sitting as one court, this case was accordingly considered and decided by the two divisions sitting as one court, pursuant to the act of the General Assembly, approved March 8, 1945, and set forth in Ga. L. 1945, p. 232 (1) (Code, Ann. Supp., § 24-3501).

*Judgment reversed. Sutton, C. J., Felton, Gardner, and Parker, JJ., concur. MacIntyre, P. J., concurring specially.*

MacIntyre, P. J., specially concurring. In certain of the

grounds of the amended motion for a new trial, complaint is made as to various charges of the trial court, the foundation of the complaint as to each being the construction placed by the court upon paragraph 11 of the lease contract. I can not concur with the construction placed upon this paragraph by my brothers on this court.

In their opinion it is said that the clause in question means that, "if the leased premises are damaged by fire, or as the direct and proximate result of fire, but not rendered wholly untenantable thereby, the stipulated and agreed rent shall not continue to be paid in the same manner as before the damage, but thereafter and pending restoration of the leased premises, the rental shall abate in proportion to the extent of these damages." But what is the meaning of the word "damages"? It can not be held to mean that the rent would abate to some extent merely because the premises had been damaged in the abstract, as is the contention of the defendant in error and as is apparently the view of my brethren and of the trial court; for it can not be conceived that the lessor would agree to have the rent abate in part unless the lessee were deprived of something by the damage done to the premises by the fire. Therefore it must be held to mean either, (1) that the rent is to abate in proportion to the extent by which the lessee was deprived of the use of the rented space by the damage—partial untenantability of rented space; or (2) that the rent is to abate in proportion to the decrease in rental value of the premises caused by the damage. The clause mentions neither "partial untenantability of space" nor "decreased rental value"; therefore the clause can not be construed in the usual and common signification of its words, for to so construe it would be to reduce its meaning to a practical irrationality.

"The whole contract should be looked to in arriving at the construction of any part." Code, § 20-704(4). The contract provides in clause 1: "Lessor does hereby rent . . to the lessee the following described *space (hereinafter called premises)*: Store room approximately 20 x 42 feet." And the first sentence of clause 11 (the second sentence of which clause is here in issue) provides: "If premises are totally destroyed (or so substantially damaged as to be *untenantable*) by storm, fire, earthquake, or other casualty, this lease shall terminate as of the date of such

destruction or damage, and rental shall be accounted for as between Lessor and Lessee as of that date." And the sentence of the same clause 11 which is here in question, and which immediately follows the sentence next above quoted, is: "If *premises* are damaged but not rendered *wholly untenantable* by any such casualty, rental shall abate in proportion as the *premises* have been damaged [*not* in proportion as the rental value has been damaged], and Lessor shall restore as speedily as practicable, whereupon full rent shall recommence." (Italics and brackets mine.) Therefore it appears that the intention of the parties was to lease mere *store space;* and there appears specific provision for an eventuality in which the *space* might become *wholly untenantable* as a result of casualty. On the other hand, there nowhere appears in the lease any expression in regard to the rent abating in proportion to decreased rental value, except as may be intimated by the eventuality provided in the case of total untenantability as a result of casualty. Why should the parties have used the word "untenantable" at all, in providing for the eventuality of damage to the premises which did not render the premises "wholly untenantable," if referring merely to damage in the abstract or decreased rental value rather than to damage which rendered the premises *partially* "untenantable"?

It may also be said that, except for the provision of clause 11 in the lease, even though the leased premises had been totally destroyed and rendered wholly untenantable by casualty, the rent contracted to be paid would not be abated. Code, § 61-113. Further, Code § 20-704 (5) provides: "If the construction [of a contract] is doubtful, that which goes most strongly against the party . . undertaking the obligation . . is generally to be preferred"; and the obligation to pay the contractual rent is upon the lessee unless he, by a preponderance of the evidence, shows himself to be entitled to an abatement therefrom within the meaning of the clause here in issue.

I think that Hieber was not entitled to any reduction of rent on account of loss of business or on account of the numerous other factors combining together to make up reduced rental value of the premises. He was entitled to a reduction only if the fire had deprived him of the effective, useful possession of a part of the leased premises, or space. If a part only of the premises

became untenantable, then the measure of abatement of rent would be the proportion which the part of the premises rendered untenantable by the casualty bore to the whole of the rented premises. To illustrate, if one-third of the rented premises here became untenantable, the rent would be abated by one-third of the contractual rental price, and the landlord could collect only two-thirds of the stipulated rent.

To illustrate further, let us assume that, in the case of a long-term lease of a storehouse, the lease contained a specific provision that, "if premises are damaged but not rendered wholly untenantable by any such casualty, rental shall abate in proportion *as the rental value of the premises is damaged by the casualty.*" Next, suppose that in a few years, when a fire occurred which caused one-third of the premises to become untenantable, the abstract market rental value of the premises had doubled by virtue of business conditions and circumstances. In such a case, a contention that there would be no abatement or reduction in the rent because the rental value had so increased as to offset entirely the decrease in rental value caused by the damage would not be well founded, for the parties must be held to the terms of the lease irrespective of any increase of market value which was not within the contemplation of the parties at the time the lease was executed. Thus it appears that such a construction, if placed upon the clause here in question, would give rise to an interminable series of practical difficulties, so that it can not be thought that the parties could have contemplated or intended such meaning at the time the contract was executed. But, under my construction of the lease in question, if one-third of the premises should become untenantable on account of the fire, then one-third of the stipulated rental would be abated under clause 11. The reduction in rent was based on the deprivation of space, or the loss of the effective, useful possession of a part of the premises to which the tenant was entitled under the lease. If the tenant was deprived by the fire of all the space rented—no rent; if he was deprived of a part of the space—no rent for that part of the space of which he was deprived. The abatement of the rent would then be in proportion to what the untenantable space bore to the whole space rented.

The right of the tenant to an abatement of rent must not be

confused with his right of action for damages in the event of a breach of duty on the part of the landlord; and my construction of the lease, of course, does not foreclose the tenant from recovering any damages accruing to him as the result of a wilful or negligent breach of duty on the part of the landlord.

I therefore concur in the judgment of reversal, but I can not concur in the construction placed upon this clause of the lease.