## 3054.    MIMMS *v.* BETTS COMPANY.

1. Even though a proposal whereby one party agrees to procure as many
   teams as he may be able to purchase, and to haul logs for another
   therewith at a given rate of compensation per hundred feet for a defi-
   nite period, may be lacking in mutuality or definiteness, on account of
   the uncertainty as to the number of teams which the first party may
   be able to purchase, still when that party has purchased a given number
   of teams and has entered into the performance of the contract, and the·
   other party has accepted the number of teams so purchased and put
   to work, as fulfilling the terms of the proposal, the contract becomes
   mutual, binding, and enforceable.   And if, during the period agreed on,
   the second party breaches the contract by refusing to allow the first
   party to continue·to perform the contract, a right of action arises in
   favor of the offended party, for the recovery of such damages as he
   may have sustained, to be estimated in accordance with the usual rules
   for calculating damages for breach of contract.
2. Where, in a transaction such as that outlined in the preceding head-
   note, the offended party sues for the breach of the contract, the meas-
   ure of his recovery is, prima facie, full payment at the contract rate;
   but the defendant may mitigate the damages by showing that the plain-
   tiff, by the exercise of ordinary care and diligence, could have rendered
   his net loss less than that amount; the burden being upon the de-
   fendant to allege and prove this defensive matter. The ultimate meas-
   ure of damage, after all the facts have been heard, is the net loss in-
   curred by the plaintiff by reason of the defendant's refusal to permit
   continued performance of the contract.

DECIDED SEPTEMBER 23, 1911.

Action on contract; from city court of Ashburn—Judge Tipton.
October 17, 1910.

*Mark Tison, Perry, Foy & Monk, Claude Payton,* for plaintiff.
*John B. Hutcheson, J. H. Pate, J. H. Tipton,* for defendant.

POWELL, J. The case comes to this court on exceptions to the sustaining of a general demurrer. The material allegations are, that the plaintiff made a contract with the defendant on January 1, 1908, by which it was agreed that the plaintiff would cut and haul logs for the defendant and place them on a tramroad, and that he was to use for that purpose as many teams not exceeding seven as he should be able to purchase. The contract was to continue through the year 1908,—that is, up to January 1, 1909. In pursuance of the contract he purchased five teams and worked them until the first of June, 1908, when the defendant breached the contract by refusing to allow the plaintiff to do any more hauling. It is further alleged that if the defendant had allowed the plaintiff to continue to perform under the contract, he would have cut, hauled, and placed on the tramroad 300,000 feet of logs per month for seven months, for which he would have received, at the contract price of $3.50 per thousand, the sum of $7,350, and that, in order for him to have earned the same, it would have been necessary for him to pay out, as expense of performing the contract, $3,500, which would have left him a net profit of $3,850. It is further alleged that owing to the time of the breach of the contract (in June, when the season was dull), he was unable to get other employment for his teams, and was compelled to keep them on hand and to feed them, and that this cost the sum of $400; that the teams cost him $2,800; that it was more economical to sell them than to continue to feed them, after he could not get employment for them; that he disposed of them at the price of $1,300, whereby he incurred a loss of $1,500. The petition sets forth the times when, and the prices at which, the various heads of stock, of which the teams were composed, were sold, and the specific loss incurred in each sale. But it is unnecessary for us to go into this feature of the case, further than to say that some of them were sold during the fall of 1908, and the others in the year 1909.

1. The court having sustained the general demurrer, it is unnecessary for us to pass upon the special demurrers; for if a court errs in sustaining a general demurrer, this court reverses the judgment and allows the court below to require that the petition be made more specific in the event any allegation is too indefinite.

It is insisted, in the first place, that the contract is unenforceable because it is too indefinite in its terms and lacks mutuality. Even

if it can be said, as it probably can, that in the beginning the contract was indefinite, or lacked mutuality by reason of the fact that the plaintiff did not undertake to furnish any specific number of teams, but was only to furnish such as he might be able to purchase, still the contract became enforceable and mutually binding when the number of teams which the plaintiff might be able to furnish was duly ascertained by his procurement of five teams and by his putting them to work for the defendant under the contract, and by the defendant's accepting them as satisfying the terms of the contract. In other words, the fact that a definite number of teams were procured, and that both parties acted under the contract and regarded this number as fulfilling its terms, cured any indefiniteness as to this feature of the contract as originally proposed.

2. The defendant, having breached the contract in June by refusing to allow the plaintiff any longer to perform, became liable for such damages as arose "naturally and according to the usual course of things from the breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Civil Code (1910), § 4395. Under the particular facts in this case the plaintiff would primarily be entitled to recover as damages the gross amount he would have earned with his teams during the remainder of the period throughout which the contract was to continue, less such expenses as he was saved by reason of not being required to perform the contract. However, upon the defendant's breach of the contract, the plaintiff became duty bound to lessen the damages as far as practicable by the use of ordinary care and diligence. Civil Code (1910), § 4398. It consequently became his duty to make the deduction, to which the defendant would be entitled under the measure of damages stated above, as large as possible; that is, it was his duty to cut out as much of the expenses as possible, or else to make the property which was causing the expense earn an income as an offset against the damages. If it were not for this duty imposed on the plaintiff of lessening damages, he might have kept his teams idle until the end of the year and have held the defendant liable for the full amount he would have earned by performing the contract; for it costs just as much to keep idle teams as it does to keep working teams. If by the exercise of ordinary care and diligence the plaintiff could have employed his teams profitably in other work, it was his duty to do so. But it

was alleged that when the breach occurred it was a time of the year when other work was not available. The plaintiff was confronted with the proposition as to whether it would be more economical to keep the teams and continue to feed them until work could be obtained, or to dispose of them at a loss. It was his duty to act under the circumstances as an ordinarily prudent man would have acted. He alleges that it was more economical to sell them. If so, the loss thus incurred is an element which may properly enter into the calculation of damages. But as to this element in the calculation this must be remembered: His loss as to teams is not the difference between what they cost him and what he sold them for, but between what he sold them for and what they would have been worth on January 1, 1909, if he had continued to perform the contract with them. Such loss as he incurred by selling the teams after January 1, 1909, was in no sense a loss chargeable to the defendant; for if he had continued to perform the contract until that date, he would have had the teams on hand, and would still have incurred the same loss. The court erred in sustaining the general demurrer, because the plaintiff showed a prima facie right to recover some amount. It was not necessary for him to allege those offsets to which the defendant may be entitled in diminution of the normal damages. These are matters of defense as to which the burden of proof rests upon the defendant. *Ansley* v. *Jordan,* 61 *Ga.* 482 (1). The rule of damages and the measure of damages applicable to the present case are substantially the same as those mentioned and outlined in sections 3588 and 3589 of the Civil Code of 1910. When the evidence is all in, the calculation of damages, if liability is established, should be upon the following basis: Take the gross amount the plaintiff would have earned if he had been allowed to continue in the performance of the contract, and deduct from it such portions of the amount he would necessarily have expended in fulfilling the contract as were saved to him by reason of his not being required to perform. This second element —the amount to be deducted—is to be ascertained after a consideration of all the facts, and after taking into consideration the duty resting upon the plaintiff of diminishing the damages by putting the teams to work, or by selling them economically. In other words, the verdict should represent the natural net loss to the plaintiff. *Chappell* v. *Western Ry.,* 8 *Ga. App.* 787.

*Judgment reversed.*