### 14937.  PHILLIPS *v.* LINDSEY.

1. In a suit to recover the agreed value of services rendered under a specified contract, where the plaintiff proves the contract and the performance of the services, a prima facie case is made out and the burden is shifted. It then devolves upon the defendant to establish any facts which he may claim should diminish or defeat the plaintiff's recovery as a result of his failure to comply with an independent covenant arising under the same contract.

2. A trial judge in declaring that the party having the burden of evidence with regard to a particular fact has so discharged it that such burden. has been shifted to his opponent may properly consider the question as to which party has within his possession or control the more precise and conclusive knowledge as to the particular fact or facts in issue. Generally facts that are peculiarly within the knowledge of a party must be proved by him.

3. An agreement by a creditor to receive less than the amount of his debt does not constitute an accord and satisfaction unless it be actually executed by the payment of the money, or the giving of additional security, or the substitution of another debtor, or some other new consideration. A compromise or mutual accord and satisfaction is binding on both parties (Civil Code of 1910, § 4330), but in order to render such agreement binding *before it is actually executed,* there must be a bona fide dispute or doubtful issues between the parties (the settlement of which would constitute a consideration) or some other consideration for such substituted contract.

4. In this case the only evidence introduced was the testimony of the plaintiff. This made out a prima facie case for a recovery, and it was error to direct a verdict for the defendant.

DECIDED DECEMBER 10, 1923.

Complaint; from Floyd superior court—Judge Wright. July 10, 1923.

G. C. Phillips brought a suit against E. E. Lindsey for the recovery of one half of designated commissions which the plaintiff

alleged that he had earned under an agreement with the defendant to find a purchaser for a Packard automobile as to which the defendant was a dealer or agent. The plaintiff alleged that he procured a customer who bought the automobile for the sum of $2600 in cash and "the exchange of an old car to the defendant at a valuation of $600." The defendant answered with a general denial of the plaintiff's allegations.

The plaintiff testified upon the trial to the making of the agreement as alleged in his petition and that he had procured a purchaser for the car in the person of a Mrs. O'Neill. He testified further: "I handled the whole thing, and I explained the Packard car to her, told her I thought it was all right; and she gave me that afternoon a check for $2600 and gave us a second-hand car at $600. I called Mr. Lindsay when she came back and asked him if he would take in the second-hand car at that price, and he agreed to it, and I then delivered him the check. It was about ten days before he delivered her the car; in fact he sold three cars from demonstrating that one. He has never paid me any commission. He said he was receiving fifteen per cent. commissions. I asked him for the commission. He said first he was going to pay me when he sold this car, and I says, all right; and it went on about 60 days, and I made demand on him and he says, 'You ought to give me that prospect,' and I told him I wasn't doing business that way. Mr. Lindsey offered verbally to go fifty fifty out of the 15% commission he was to receive. The car was to be sold for cash. It was not sold for cash, but he knew it was not; he agreed to take the old car in. The old car was discussed. We agreed on its value after Mrs. O'Neill came to my office. It is not true that the whole transaction was to be handled on a cash basis, and that I went back to Mr. Lindsey with the proposition of taking over this car at $600, and he told me he wouldn't do it. I offered to take the new car at cost, plus $100, and take in the old car, but didn't have the cash at that time to handle the old car, but I could if he would take my note. He did not agree to handle my note, and I says, well, you go ahead and sell it, and if there is any loss I will bear my part, and it rocked on and he sold it. I mean to say that Mrs. O'Neill gave her check while the car was in Atlanta some ten days before its delivery. The car was not in Rome at that time." "I had that check payable to Mr. Lindsey, and I handed it to him

myself. This proposition of sale, this second-hand car was an after consideration; he had already agreed to accept it at $600. Mr. Lindsey didn't pay me anything for me to agree to share a part of the loss in this second-hand car. There was no consideration offered me by him for that,—to share the loss in this second-hand car. When he came and offered me the car and me pay him $100, I didn't have the money, and I says, 'All right, you sell it, and whatever you sell it for, I'll lose my pro rata.' In other words I wiped out the old contract and made a new trade, but nothing was given me to let the new trade take the place of the old trade." No other testimony was given. The court directed a verdict for the defendant, and the plaintiff excepted.

*Harris & Harris*, for plaintiff. *Denny & Wright*, for defendant.

BELL, J. (After stating the foregoing facts.)

1. It is insisted on the part of the plaintiff in error that in no event should a verdict have been directed for the defendant, but that if the plaintiff did not prove his case as laid, a nonsuit would have been the proper disposition of the case. It is maintained further, however, that the evidence would have authorized a recovery and that the case should have been submitted to a jury. On the other hand it is contended by the defendant in error that the plaintiff having failed to show whether a loss was sustained by the defendant in the sale of the second-hand car, no basis for a recovery was established in the proof, and that under the evidence adduced the verdict was properly directed for the defendant.

We are satisfied that the plaintiff did not *disprove* his case. If he merely failed to prove it the court should have granted a nonsuit instead of directing a verdict. But was the plaintiff entitled to go to the jury at all? The defendant in error insists that the evidence of the plaintiff is equivocal and uncertain, and should be construed most strongly against him in reference to the time of the making of the agreement whereby he would share his part of the loss, presumably an equal part, sustained in the sale of the second-hand car, and that when the evidence is so construed it would appear that this agreement was entered into before the new car was sold and was therefore a part of the original contract for a division of commissions. Assuming that this contention is well founded, we are nevertheless of the opinion that the plaintiff sufficiently carried the burden of evidence to avoid a nonsuit or other adverse direction

by the court as a matter of law. The agreement to share the losses on the sale of the second-hand car did not nullify or supersede the contract for a division of the commissions on the sale of the new car. It was an independent obligation or covenant arising under the same contract, for a breach of which the defendant would have been entitled to a recoupment.

"Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." Civil Code (1910), § 4350. "Recoupment may be pleaded in all actions ex contractu, where from any reason the plaintiff under the same contract is in good conscience liable to defendant. And in all cases where, under the laws of this State, recoupment may be pleaded, if the damages of the defendant shall exceed in amount those of the plaintiff, the defendant shall in such cases recover of the plaintiff the amount of such excess. Civil Code (1910), § 4353.

If the plaintiff was not entitled to recover his full proportionate share of the commissions as originally agreed upon, the onus was upon the defendant to show that fact by way of defense. In a suit to recover the *agreed* value of services rendered under a specific contract, where the plaintiff proves the contract and the performance of the services, a prima facie case is made out, and the burden is shifted. It then devolves upon the defendant to establish any facts which he may claim should diminish or defeat the plaintiff's recovery as a result of his failure to comply with an independent covenant arising under the same contract. Compare *Gem Knitting Mills* v. *Empire Printing Co., 3 Ga. App.* 709 (3) (60 S. E. 365).

2. Furthermore, whether there had been a loss on the sale of the second-hand car, in which both the parties should share, was a matter more logically within the knowledge of the defendant. "One who assumes the burden of proof is only required to carry the burden of evidence until his contention has been prima facie established. The position of the 'burden of proof' is determined by the pleadings, and as to this the burden of proof is unchanging; once imposed it remains. But the burden of testimony may be shifted and alternate between the parties according to the contingencies and crises of the trial. A trial judge, in declaring that the

party having the burden of evidence with regard to a particular fact has so discharged it that the burden of evidence has been shifted to his opponent, may properly consider the question as to which party has within his possession or control the more precise and conclusive knowledge as to the particular fact or facts in issue. Generally, facts that are peculiarly within the knowledge of a party must be proved by him, and a judge may more promptly discharge a litigant from his burden of evidence either when knowledge as to the proposition is peculiarly within the power of his opponent, or where the proposition is a negative one." *Hyer* v. *Holmes,* 12 *Ga. App.* 837 (3, 4) (79 S. E. 58).

Conceding therefore that the defendant in error is right in saying that the agreement for a division of losses on the old car should be treated as a part of the original contract, we think it was error on the part of the trial judge to direct a verdict in favor of the defendant at the close of the plaintiff's evidence, and that it would even have been error to award a nonsuit.

3. Being of this view, we hardly think it necessary to go into a further contention of the plaintiff in error, opposite to that of the defendant in error last referred to, that the agreement to share any loss which might result in the sale of the old car was subsequent to the original undertaking and was a nudum pactum. We are of the opinion, however, that, in so far *as appears from the evidence adduced,* there was no consideration for the agreement in reference to such loss if it was in fact a new and distinct undertaking entered into after the new car had been sold and the check therefor with the old car at the agreed valuation of $600 had been accepted in payment.

If such agreement as to a sharing of the loss was thus subsequent it would of course not be binding without a consideration. "An agreement by a creditor to receive less than the amount of his debt cannot be pleaded as an accord and satisfaction, unless it be actually executed by the payment of the money, or the giving of additional security, or the substitution of another debtor, or some other new consideration." Civil Code (1910), § 4329. A settlement or mutual accord and satisfaction is binding on both parties. Civil Code (1910), § 4330. But it does not appear as a matter of law that there was a bona fide dispute (*Riley* v. *London Guaranty & Accident Co.,* 27 *Ga. App.* 686 (1 *c*), 109 S. E. 676), or that

there were doubtful issues between the parties (*Boswell* v. *Gillen,* 131 *Ga.* 310 (4), 62 S. E. 187), the settlement of which would afford a sufficient consideration; and yet, if the evidence demanded the conclusion that the plaintiff's obligation to share in the loss in the sale of the second-hand car was both subsequent and supported by a consideration, the burden of showing such loss, as we have seen, would still have devolved upon the defendant.

4. In any view of the evidence, it appeared that the agreement by which the plaintiff was to receive one half of the commissions on the sale of the new car was never abrogated. The testimony of the plaintiff made a prima facie case, and the opposite party should then have been required to defend.

It is unnecessary for us to determine whether the agreement for a share of losses in the sale of the second-hand car should be considered under the evidence as a part of the original contract or as a subsequent new and distinct agreement, for in either event the case must go back. This question will likely be developed more clearly upon another trial, when it may be determined whether such agreement was binding under the rules herein expressed.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*