## 37150. BIGELOW-SANFORD CARPET COMPANY, INC. *v.* GOODROE *et al.*

DECIDED SEPTEMBER 22, 1958—REHEARING DENIED
OCTOBER 21, 1958.

*Troutman, Sams, Schroder & Lockerman, William H. Schroder, Tench C. Coxe, Kelley & Mobley, Sumter Kelley, Carlton C. McCamy,* for plaintiff in error.

*Nolan B. Harmon, Dudley B. Magruder, Douglas Mitchell, Jr.,* contra.

CARLISLE, . Judge. This case began when Bigelow-Sanford Carpet Company, Inc., doing business as Hartford Rayon Company, filed suit against Charles Goodroe and Eleanor M. Goodroe, individually, and as trustee for Charlotte Goodroe, and as trustee for Stanley Goodroe, individually, and doing business as Laura Yarn Mills and/or Laura Mills, on an open account for $89,682.45 worth of yarn alleged to have been shipped to the defendants. Pending that suit, the defendants were placed in involuntary bankruptcy by the plaintiff and the original petition was dismissed. In the meantime, the defendants filed an answer and a cross-action against the plaintiff. Thereafter, the plaintiff made oral motions to strike certain paragraphs of the cross-action which alleged the damages claimed by the defendants and made an oral motion to dismiss the petition, and also filed a general demurrer to the cross-action. The trial court overruled the oral motions to strike the separate paragraphs, overruled the motion to dismiss and overruled the general demurrer to the cross-action, and the exception here is to that judgment.

In the cross-action, the defendants alleged that on or about November 15, 1956, they were indebted to the plaintiff in the sum of $142,790.65 for merchandise purchased from the plaintiff, and of that amount $78,814.40 was due on said date; that on that date a representative of the plaintiff met with the defendant Charles Goodroe and entered into an agreement, the substance of which was that the plaintiff promised to ship and sell to the defendants 50,000 pounds of Hartford rayon staple per week, and that the defendants agreed to accept and purchase the staple and to manufacture it into Hartford rayon yarn exclusively at their mill and to pay for said staple at the specified price per pound; that as a part of the agreement, the plaintiff promised not to bring legal action against the defendants on the indebtedness until January 1, 1957, and not to bring it at that time if the defendants' account with the plaintiff was current, and defendants promised to have said account current by that date; that as a part of the agreement, the defendants agreed to convert their mill at Villa Rica, Georgia, to rayon production rather than cotton, and they alleged that they did convert the

mill at an expense of $23,000; that the defendants made financial arrangements for financing their business and bringing their account with the plaintiff to a current status and made arrangements to obtain the necessary funds; that notwithstanding the agreement and burden placed upon the defendants under the arrangement, the plaintiff refused to make the shipments of raw material as agreed, its representative stating in response to inquiry by Charles Goodroe that the reason for their failure to ship was a shortage of materials, which statement was false and known to be false by the said representative of the plaintiff; that this failure to supply the defendants with the agreed quantity of rayon staple forced the defendants to close down their mill at Douglasville, Georgia, and it was thereby rendered impossible for them to perform their obligation to bring their account with the plaintiff to a current status, which fact was well known to the plaintiff's agent and employees when they refused to ship said rayon staple; that on January 8, 1957, the plaintiff instituted this action and thereafter filed proceedings in the United States District Court of the Northern District of Georgia forcing the defendants into involuntary bankruptcy.

The defendants alleged (par. 24) that before the plaintiff caused their mills to be shut down, the mills were running at a net profit of approximately $3,000 per month and capable of running at a profit of approximately $8,000 per month, and that they have been deprived of the earnings of the mills since they were shut down; that (par. 25) the mill business in Douglasville was reasonably worth $125,000 before it was shut down, but only worth $70,000 afterwards, and that the mill business in Villa Rica was reasonably worth $140,000, but worth not more than $100,000 after it was shut down; that (par. 26) defendants were forced by the plaintiff into a financial position where they were unable to pay their debts; that their earning power has been destroyed; their credit reputation damaged to the extent that they are unable to borrow money, all to the extreme hurt, chagrin, dismay and inconvenience of the defendants, and that the general reputation of the defendants has been grieviously damaged by the acts of the plaintiff and that they are entitled to recover compensatory damages in the

amount of $25,000 each; that (par. 27) by reason of the unlawful conduct of the plaintiff and the dismay and inconvenience which it caused the defendants to suffer, the defendants should be awarded punitive damages in the amount of $50,000, and (par. 28) that by reason of the bad faith of the plaintiff, the defendants have been forced to employ the services of an attorney and they asked that they be awarded reasonable attorney's fees in the amount of $5,000 and the prayer was that the defendants have and recover a judgment against the plaintiff in the amount of $225,000 together with $3,000 per month from January 1, 1957, together with the costs of this action, and that the said judgment be reduced and off-set by any recovery by the plaintiff.

The plaintiff orally moved to strike paragraphs 24, 25, 26, 27 and 28 of the petition on the ground that the damages set forth therein were not recoverable in the cross-action, and moved to dismiss the cross-action on the ground that it failed to set forth a cause of action.

■ It appears from the additional record sent to this court that the Honorable Oscar W. Roberts, trustee in bankruptcy for the parties named as defendants in error, intervened in the court below for the purpose of defending and prosecuting the action, and that his motion to intervene was granted by the trial court on October 8, 1957. It further appears that he was represented by the same counsel who represent the other defendants and upon whom service of all motions and pleadings in the court below and upon whom service of the writ of error in this court and all briefs in this court have been perfected, and who appeared by brief and oral argument for the named defendants in error. The bill of exceptions, however, failed to name the said Oscar W. Roberts as a defendant in error and counsel for the defendants in error have made a motion to dismiss the writ of error on the ground that it failed to name a necessary party as defendant in error. Counsel for the plaintiff in error have made a counter-motion to amend the bill of exceptions and to add the said Oscar W. Roberts, Jr., as a party defendant in this court. The motion to dismiss the writ of error is not meritorious under authority of Code (Ann.) § 6-1202, and, therefore, is denied. The motion to amend the bill of

exceptions so as to name the Honorable Oscar W. Roberts a party defendant in error is proper, and has been granted. *Chatfield* v. *Dennington,* 206 *Ga.* 762 (1) (58 S. E. 2d 842).

■ The defendant contends in this court that these motions were properly overruled by the trial court since they sought to attack individual paragraphs of the cross-action rather than the cross-action as a whole, and that the proper method of attacking the individual paragraphs of the cross-action is by special demurrer, which must be in writing and must be filed within 15 days after the cross-action is filed. Code (Ann.) § 81-301. This contention is not meritorious. A motion to strike is nothing more than a demurrer. It performs the office of a general demurrer. *Holcombe* v. *Jones,* 197 *Ga.* 825, 829 (30 S. E. 2d 903); *Meads* v. *Williams,* 55 *Ga. App.* 224 (1) (189 S. E. 718); *DuBois* v. *Smith,* 76 *Ga. App.* 556, 557 (46 S. E. 2d 590). Like a general demurrer, such a motion may be made at any time and it may be addressed to particular paragraphs of a pleading. *Ayers* v. *Young,* 210 *Ga.* 441, 442 (80 S. E. 2d 801). A motion to strike is no less general merely because it is aimed at only one of the separate and distinct matters set up in a pleading. *Ayers* v. *Young,* supra, p. 444. The oral motions to strike the various paragraphs of the cross-action alleging the damages claimed by the defendant constituted a proper and permissible method of raising the question as to whether those elements of damages were recoverable in this action. *Peoples Loan Co.* v. *Allen,* 199 *Ga.* 537, 565 (34 S. E. 2d 811).

■ The oral motion of the plaintiff to strike the various allegations of damages from the defendants' cross-action and the exception to the order overruling those motions raise for this court's consideration the question of whether the various items of damages set forth in the cross-action are recoverable; and, finally, whether the cross-action itself stated a cause of action. Paragraph 24 of the cross-action alleges as an item of special damages that the defendants' mills were earning $3,000 per month, of which earnings the defendant has been deprived because of the acts of the plaintiff, and paragraph 25 alleges that the worth of the two mills has been diminished by a total of $95,000 on account of their ceasing to operate as a result of

the plaintiff's act. While both counsel for plaintiff in error and counsel for defendant in error treat these items as separate elements of damage, it would seem that they are one and the same thing, or at least that the profit derived from the operation of the mills is an element to be considered in arriving at the value of the properties as going businesses. Certainly, both profits and diminished worth would not be recoverable in the same action. However, we have come to the conclusion that neither is recoverable in this case.

Irrespective of whether it can be said that, under a proper allegation of fact, the profits to be realized by a manufacturing concern were within the contemplation of the parties to a contract of this nature (Code §§ 20-1406 and 20-1407; *Firestone Tire & Rubber Co. v. Shore*, 31 *Ga. App.* 644, 647, 121 S. E. 709), the petition in this case does not allege such facts as would authorize a recovery, but on the contrary shows affirmatively that the defendant did not take any action to minimize its damages. While ordinarily such things as recoupment, setoff and matters relating to the reduction of the damages alleged by the plaintiff are defensive in nature, and the burden is on the defendant to show these facts (*Phillips* v. *Lindsey*, 31 *Ga. App.* 479 (1), 482, 120 S. E. 923), and the failure of the plaintiff to diminish his damages is a matter to be affirmatively pleaded and proved by the defendant (*Mimms* v. *Betts Co.*, 9 *Ga. App.* 718 (2), 72 S. E. 271); *Branon* v. *Elbee Pictures Corp.*, 42 *Ga. App.* 293 (2), 155 S. E. 923; *Speer* v. *Johnson*, 48 *Ga. App.* 759, 761, 173 S. E. 449), the rule is otherwise where the petition, as in this case, affirmatively shows that the plaintiff has failed to take any efforts to minimize his damages. *Aircraft Apartments* v. *Haverty Furniture Co.*, 71 *Ga. App.* 560, 561 (1) (31 S. E. 2d 419). It is alleged that the loss of the profits resulted from the acts of the plaintiff in failing to sell and deliver to the defendants yarn pursuant to the terms of the contract and that as a consequence the mills were forced to shut down, thus diminishing their value. It affirmatively appears from these allegations of the cross-action in this case when they are construed most strongly against the pleader, as they must be on general demurrer, that the defendants failed to make any effort

to minimize their damages by seeking to purchase other suitable yarn in order to operate their mills and permitted their mills to be shut down without making any effort to continue operating them. This construction of the cross-action is authorized by the fact that the allegations thereof fail to show what efforts, if any, the defendants made to obtain other and suitable fiber for manufacturing into yarn, and they fail to show that other suitable fiber was not available or obtainable by them or, that, if other suitable fiber was not available or obtainable by them, why it was not available and why the defendants could not obtain it in the open market and continue to operate the mills. On the contrary, the allegations of the answer and cross-action when considered on general demurrer show that the defendants made no effort to obtain other suitable fiber, and it fails to allege any facts showing that the defendants took any act to minimize their damages. Under these considerations, it cannot be said that the shutdown of the mill and the consequent loss of profits and diminution in their value was the reasonably anticipated result of the plaintiff's breach of the contract. See in this connection, *Georgia Railroad* v. *Hayden,* 71 *Ga.* 518 (51 Am. R. 274); *Montgomery* v. *Alexander Lumber Co.,* 140 *Ga.* 51 (78 S. E. 413); *Consolidated Phosphate Co.* v. *Sturtevant Co.,* 20 *Ga. App.* 474 (2) (93 S. E. 155).

The defendants rely on *Levy Bro. & Co.* v. *Allen,* 53 *Ga. App.* 246 (185 S. E. 369); *Walker* v. *Jenkins,* 32 *Ga. App.* 238 (5) (123 S. E. 161); *Haas & Haas* v. *Marks,* 158 *Ga.* 267 (123 S. E. 109); *Carolina Portland Cement Co.* v. *Columbia Improvement Co.,* 3 *Ga. App.* 483 (60 S. E. 279). Each of these cases involved special facts where the profits which were the fruit of the contract could be said to have been within the contemplation of the parties in making the contract and where the damages by way of lost profits resulting from the breach could be said to have been the direct result of the breach. Each of these cases involved special circumstances such as a violation of a contract of employment or the violation of a lease contract for a specific piece of property and involving a long established and successful business where the facts alleged showed that there was nothing that the plaintiff failed to do to minimize his damages. These

cases do not require a ruling different from that made in this case.

The fact that the defendants had an exclusive contract to manufacture the plaintiff's rayon fibers into yarn did not justify the defendant's failure upon the breach of the contract by the plaintiff to take steps to minimize their damages by going into the market and obtaining other suitable fiber to manufacture into yarn. For these reasons, the oral motions to strike paragraphs 24 and 25 of the cross-action were meritorious and should have been granted by the trial court.

■ Paragraph 26 of the petition seeks to recover damages denominated as compensatory on account of the loss of the defendants' earning power, their credit, and on account of their extreme hurt, chagrin, dismay, and inconvenience and on account of the injury to their reputation as the result of the deterioration of their credit rating. Under the rules of law announced in the preceding division of the opinion, such damages are too remote to be recovered for the reason that they are not such as arise naturally and according to the usual course of things from the breach of the contract and therefore were not such as could be said to have been reasonably within the contemplation of the parties. Code §§ 20-1406 and 20-1407.

Paragraph 27 seeks the recovery of punitive damages and it is sufficient to quote Code § 20-1405 that, "Exemplary damages can never be allowed in cases arising on contract" to show that these damages were not recoverable. It follows that the trial court erred in overruling the motion to strike paragraphs 26 and 27.

■ The final element of damages claimed in the cross-action is attorney's fees. Whether or not attorney's fees can be recovered in an action ex contractu is not necessary for us to decide here, since, under the above holding that none of the other items of damages are recoverable, it necessarily follows that attorney's fees cannot be recovered. The court, therefore, erred in overruling the motion to strike paragraph 28.

■ Where the petition or cross-action, as the case may be, fails to allege any item of recoverable damages, a general demurrer thereto should be sustained unless the pleader amends

to supply these essential allegations. The defendants in error contend that they were at least entitled to recover general or nominal damages. However, the cross-action fails to allege or pray for general or nominal damages, and when construed most strongly against the pleader, as must be done on general demurrer, or on motion to dismiss, it is not apparent that the defendant is claiming or seeking to recover general or nominal damages, and, therefore, the rule relied on by the defendants is not applicable here. See *Hadden* v. *Southern Messenger Service,* 135 *Ga.* 372, 374 (69 S. E. 480); *Strickland* v. *Flournoy,* 95 *Ga. App.* 315 (2) (97 S. E. 2d 638).

Another contention made by counsel for the defendants is that the cross-action here involved could be construed as one ex delicto and that some of the items of damages claimed would be recoverable in such an action. The allegations of the cross-action, however, show that the sole basis for the defendants' claims against the plaintiff was the violation of the agreement to sell and deliver rayon staple under the terms of the contract set forth. Nothing in the cross-action even purports to show the violation by the plaintiff of any public duty owing the defendants. *American Oil Co.* v. *Roper,* 64 *Ga. App.* 743, 749 (14 S. E. 2d 145). The mere characterization of the breach of the contract as being in bad faith would not be sufficient to convert the action from one ex contractu to one ex delicto. *Dawson Cotton Oil Co.* v. *Kenan,* 21 *Ga. App.* 688, 691 (94 S. E. 1037). The cross-action in this case clearly was not an action in tort, but was an action to recover damages for breach of contract.

It follows from what has been said above that the trial court erred in overruling each of the motions to strike the various paragraphs of the cross-action alleging the items of special damage claimed by the defendants. However, the failure to allege the proper measure of damages was an amendable defect, and it would not have been proper for the court to have dismissed the petition after sustaining the motions to strike the allegations of special damages, but the court should have, if it had sustained the motions to strike these allegations, granted the defendants leave to amend by setting up a correct measure

of damages, and if they failed to so amend within the time allowed, then it would have been proper to have dismissed the entire petition since there are no allegations nor prayer for general or nominal damages.

*Judgment affirmed in part and reversed in part. Felton, C. J., Gardner, P. J., Quillian and Nichols, JJ., concur. Townsend, J., dissents.*

Townsend, Judge, dissenting. The majority opinion recognizes that where a petition shows a breach of contract with consequent damages, failure to minimize the damages is a matter of defense, and the petition is not subject to demurrer for this reason unless it affirmatively appears that the plaintiff did not take steps which he should have taken and which would have reduced his damages. The opinion then construes the cross-action as showing that the defendants failed to take necessary steps to minimize the damages, and states: "This construction of the cross-action is authorized by the fact that the allegations thereof fail to show what efforts, if any, the defendant made to obtain other and suitable fiber for manufacturing into yarn, and they fail to show that other suitable fiber was not available or obtainable by them or that if other suitable fiber was not available or obtainable by them, why it was not available and why the defendants could not obtain it in the open market and continue to operate the mills." The contradiction in terms is this: if a mere failure to allege what steps were taken to minimize damages results in an inference that no such steps were taken, then the rule that the burden is not on the pleader to allege what steps he has taken is done away with in its entirety. It cannot be inferred from mere failure to allege minimization of damages that all reasonable efforts in that direction were not made any more than it can be inferred from mere failure of a plaintiff in a damage action to allege that he was in the exercise of ordinary care that he was not in the exercise of such care. The presumption is, in such cases, that the required degree of care was used, and that the required effort to minimize damages was made. That is the whole meaning of rulings to the effect that such situations, if they exist, are matters for the defense to plead and prove.

The cross-action here alleges that under one of the contract terms the defendants converted to rayon staple, the yarn to be used by MyLue Corporation, a customer of the plaintiff without adequate facilities for the processing of raw materials; that the plaintiff failed to provide the staple as agreed, and "that the failure of plaintiff to supply defendants with the agreed quantity of rayon staple raw material forced defendants to close down their mill at Douglasville, Georgia." Accordingly, taking this allegation as true as against general demurrer it appears that the defendants at a cost of $23,000 outfitted themselves to supply one of the plaintiff's customers with a particular kind of yarn; that the plaintiff's breach of contract prevented them from so doing, and they thus lost, at least, the $23,000 spent in converting from cotton to rayon staple for this purpose. It is my opinion that the petition is not subject to general demurrer in that it affirmatively shows as stated in the majority opinion that the defendant failed to minimize his damages, nor do I believe it is subject to general demurrer for failure to allege a proper measure of damages.