38609.  SMITH v. A. A. WOOD & SON COMPANY.

Decided May 9, 1961—Rehearing denied June 6, 1961.

*Walter W. Aycock,* for plaintiff in error.

*Herbert H. Cheek, Howard & Storey,* contra.

BELL, Judge. ■ Our initial attention is directed to the motion first made in this court by the plaintiff in error to amend the bill of exceptions to show that the final judgment excepted to was rendered on August 11, 1960, rather than July 12, 1960. However, the motion itself conflicts with the record, which displays that the final judgment was rendered on August 12, 1960. Accordingly, we adjudge it unnecessary to pass upon this motion to amend the bill of exceptions, since the record before this court, if in conflict with the recitations in the bill of exceptions, will prevail. *Upshaw v. O'Bryant,* 101 Ga. App. 781 (115 S. E. 2d 591). In any event, taking the date of the final order as shown in the record of August 12, 1960, the bill of exceptions tendered on September 12, 1960, was presented within the allowable time from the date of the final order. *Code Ann.* § 6-902. While the final date of tender was 31 days from the date of the order, the 30th day fell on Sunday, which allowed the defendant until Monday, September 12, in which to accomplish the tender. *Code Ann.* § 102-102.

■ In the answer the defendant alleged that the plaintiff failed and refused to deliver the amusement devices and tractors prior to July 4, 1959, with the result that the defendant, being in a highly seasonal business, was prevented from earning income during the biggest day of the year, the 4th of July, and, in fact, during the entire month of July; that the items delivered in August, during the defendant's absence and without his authorization, were found to be defective, entirely too slow, and not suited for the very purpose intended, an amusement ride for children, and, as such, were worthless to the defendant; that the carburetors were defective, their speed and gear ratio were entirely contrary to what was ordered, which resulted in the motors to the units burning out, and although the plaintiff guaranteed these units for 30 days, when

they burned out the plaintiff failed to honor the guarantee and the defendant "tenders the entire order back to plaintiff."

By way of counter-suit it was alleged that through the failure of the plaintiff to deliver the units and amusement devices as promised, the defendant incurred his fixed lease expenses and other charges without being able to open the rides, and was damaged "in loss of income at least $8,500, of which 50% was profit or $4,250," for which the plaintiff was indebted to the defendant because of breach of contract.

The first amendment to the answer and counter-suit asked for attorney's fees because the plaintiff was stubborn and litigious in bringing the action knowing of its breach of contract as to the time of delivery and faulty mechanisms of the machines, and asked for judgment in the sum of $500.

The defendant's second amendment alleged specifically that the motors were defective, causing excessive wear and burning out, charged certain other defects, and called upon the plaintiff to honor the guaranty on the units delivered by taking back the machines except as to stipulated invoices totalling $273.84, for which the defendant admitted liability and claimed a credit of $200 against this amount. This credit was admitted by the plaintiff.

The record reveals the testimony of the defendant to be that the plaintiff agreed to redesign the gear ratio and make other alterations in the machines so that they would be suitable for the purpose for which bought, namely, the operation of amusement riding devices for children at Jekyll Island; that two of the machines were designed by the plaintiff and used by the defendant on a trial-and-error basis; that certain defects were found in them; that the plaintiff was notified of these defects; that the defendant could not secure any adjustments from the plaintiff on these; and, in short, the plaintiff had breached the contract in numerous respects both as to suitability of the machines in failing to live up to the agreed-upon changes and as to the time of delivery. The defendant testified, as to loss of property, as follows: "I told him [Mr. Fortinberry, agent of the plaintiff] we had a machine for a comparison, a gasoline vehicle, I operate down on Jekyll

Island grossed me $8,500 gross. We figure that roughly by the time you amortize your equipment and everything else and pay your percentage, you are entitled to about 50 percent gross profit. I promised some very reliable people in this state we would put these in and I gave this promise based on a definite delivery of the equipment. So although the Jekyll Island Authority hasn't said too much about it, they naturally know it and it is jeopardizing my position with them, which I don't want to do. I have everything I have invested in Jekyll Island and I'm trying to do a good job. It has caused me embarrassment with them, it has caused me to loose [sic] a year's time, which I would estimate to be $8,500 because I have another gasoline-type automobile—the one Mrs. Manning sells—makes me $8,500 and it stood to reason that this ought to do the same thing. So I have lost a year by fooling with this stuff." The defendant also testified that he had to spend other money to protect his lease, but no amount was given. On recross-examination, the defendant testified that he canceled the order on June 26th by calling the plaintiff's office and talking to someone whose name he didn't remember but he thought was one of the maintenance men.

In short, the summation of the defendant's evidence, if believed by the jury, was that he canceled the order for the machines; that the machines which were delivered were unsatisfactory in numerous respects and did not conform to the standards of the contract, all of which, if believed by the jury, could result in their finding for the plaintiff only in the sum of $73.84, unless the defendant's claim for loss of profits as demanded in the counter-suit could have been legally awarded by the jury. This pinpoints the error assigned in special ground 4 which urges that the court erred when it removed from the jury any consideration of the claim in the counter-suit for loss of profits, instructing the jury that "the law does not allow the recovery of such speculative damages nor attorney's fees."

Code § 20-1406 provides: "Remote or consequential damages are not allowed whenever they cannot be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the imme-

diate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." *Code* § 20-1407 states that: "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Under the authority of *Code* § 20-1406, numerous cases have refused the recovery of profits on the grounds that they were too speculative. Possibly the foremost case on the point in Georgia is *Georgia Railroad v. Hayden,* 71 Ga. 518 (51 Am. Rep. 274), which, following the leading English case of Hadley v. Baxendale, 9 Exch. R., 341, 354, stated the rule to be that damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach, and such as the parties contemplated when the contract was made, as the probable result of its breach. In the *Hayden* case the plaintiff, a theatrical manager, took passage for himself and his troupe on the defendant railroad at Madison, Georgia, in order to go to Columbia, South Carolina, where a performance was to be given the following night and for which tickets had been sold in the amount of $288. Because of a collision on the railroad, the train was delayed and the plaintiff's theatrical troupe missed connection with the next train, resulting in a failure to reach their destination. This necessitated the refunding of the purchase price of the seats to the patrons for the performance in Columbia, South Carolina. The first notice the railroad had that the plaintiff might sustain the loss was by a telegram "sent at an unseasonable hour" to the railroad officials in Augusta asking for an extra train and claiming damages for the anticipated loss. This telegram was sent while the train was at the scene of the collision somewhere between Madison and Augusta, and, according to the facts recited, it does not appear that it reached the defendant's agent in time to relieve the difficulty or that the railroad had at its command the remedial means. The Supreme Court held that the damages resulting from the particular character of the business of the traveler contracting

with the railroad, unknown to the railroad company, were too remote to be recovered. The court stated the rule to be that "Damages are too remote, whenever they cannot be 'traced solely to a breach of the contract,' and not then 'unless they are capable of exact computation, such as profits, which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract.' "

Under certain circumstances lost profits resulting to the buyer from the seller's non-delivery may constitute a proper element of damages. The courts generally have added the proviso to this principle that the damages must reasonably be considered to have been within the contemplation of the parties when the contract was made as a probable result of the breach, and the amount of the loss must be ascertained with reasonable certainty under the evidence. This required reasonable certainty has been found where there was an interruption of the buyer's manufacturing business which was well established and the profits thus became reasonably certain as to computation. Kelley, Maus & Co. v. LaCrosse Carriage Co., 120 Wis. 84 (97 N.W. 674, 102 Am. St. Rep. 971). However, there is no right to recover profits lost where the damages are not so foreseeable or the amount cannot be ascertained with reasonable certainty from the evidence. *Van Winkle & Co. v. Wilkins*, 81 Ga. 93 (7 S. E. 644, 12 Am. St. Rep. 299). See also Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, Inc., 257 F. 2d 162 (3), 166, and cases there cited. See also 46 Am. Jur. 825-827, Sales, § 702.

The trial court by its instruction to the jury properly ruled out the defendant's claim for damages for loss of profits. The rules stated, applied to the testimony here, reveal clearly that there was no loss of profits proved "capable of exact computation" as required by the statute. By the most liberal construction, all the defendant's testimony proved was that he had a machine the previous year which grossed $8,500, and "we figure that roughly by the time you amortize your equipment and everything else and pay your percentage, you are entitled to about 50 percent gross profit." Under the evidence

the profits were contingent upon the receipt of an uncertain amount of patronage at an amusement resort. No books or records were introduced which tended to prove any profits of the year in question, nor was any comparison made with any previous years.

But assuming the profits had been proved with reasonable certainty, there is yet another reason why the defendant cannot recover upon the cross-action. There were no allegations in the answer and cross-action nor any evidence to show that the defendant took any steps to reduce or to minimize his damages. Where appropriate action to mitigate the loss has not been taken, damages in the nature of lost profits are not recoverable. *Bigelow-Sanford Carpet Co. v. Goodroe,* 98 Ga. App. 394 (3) (106 S. E. 2d 45).

The expenses of litigation and attorney's fees are recoverable only in cases where other elements of damages are recoverable. Accordingly, the attorney's fees sought to be recovered by the amended cross-action were properly withdrawn from the consideration of the jury. *Ibid,* p. 394 (5, 6), pp. 401, 402.

Special ground number 4 has no merit.

■ Special ground 5 assigns error on the following portion of the charge to the jury: "In all events, your verdict will have to be for the plaintiff. The least it can be is $73.84; if my calculations are correct; and I have explained to you how you should arrive at those calculations." It is contended that this portion of the charge was contrary to law and amounted to an expression of opinion on the facts and to the direction of a verdict for the plaintiff. *Code* § 81-1104 makes it reversible error for the judge of any superior court to express or intimate his opinion as to what has or has not been proved. However, here the defendant admitted owing $73.84, which is the amount stated in the charge immediately following the instruction that the verdict would have to be for the plaintiff. As thus qualified, there is no error unless the evidence otherwise would have warranted the jury's finding in favor of the defendant. Here the pleadings and the evidence of the defendant were, in substance, that the property sold and delivered was delivered after the due date agreed upon for delivery and that it was not otherwise suit-

able for the purpose for which intended. Under the evidence the most the jury could have found favorable to the defendant was that the defendant was not liable for the purchase price of the machines if they were found not to be as warranted. Under this situation, the trial court correctly instructed the jury that in any event it would have to find for the plaintiff in the amount of at least $73.84.

Special ground 5 of the amended motion has no merit.

Special ground 6 of the amended motion for new trial is merely cumulative of special grounds 4 and 5 and is governed by the expressions contained in divisions 2 and 3 of the opinion.

The general grounds not being urged are deemed abandoned.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*

ON MOTION FOR REHEARING.

BELL, Judge. The plaintiff in error in his motion for rehearing insists that the verdict of the jury for approximately two-thirds of the amount claimed by the plaintiff is unjustified, since one-half of the goods sold remained in the possession of the plaintiff seller (the defendant having refused to accept them). A study of the evidence indicates that the jury, in arriving at its verdict, gave the plaintiff judgment for the items sold and delivered plus the cost of some apparent services and repairs, and in addition allowed the cost to the plaintiff of work done in modifying the machines to fit the defendant's particular specifications. Under these circumstances, the verdict was warranted by the evidence, and *Code* § 96-103 does not compel a different conclusion.

*The motion for rehearing is denied.*