**FIFTH DIVISION**
**BARNES, P. J.,**
**REESE, P. J., and COLVIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 28, 2020**

# In the Court of Appeals of Georgia

A20A0962. ULTRA GROUP OF COMPANIES, INC. v. S & A 1488 MANAGEMENT, INC. et al.

REESE, Presiding Judge.

Ultra Group of Companies, Inc. ("Ultra") appeals from the trial court's final order affirming a decision of the Georgia Lottery Corporation ("GLC") and the hearing officer's decision in favor of S&A 1488 Management, Inc. and Salim Gillani (collectively, the "Appellees"). On appeal, Ultra argues that the GLC hearing officer erred in finding that the liquidated damages provision in the parties' contract was an unenforceable penalty, and that Ultra failed to prove its lost profits arising from the breach of the agreement. For the reasons set forth infra, we affirm.

The background facts are largely undisputed. Ultra is coin-operated amusement machine ("COAM") master license holder. In 2011, Ultra entered into a ten-year

agreement with the Appellees to provide COAMs at a convenience store in Duluth. The parties split the revenue from the COAMs pursuant to the agreement. The contract contained a liquidated damages provision:

> Liquidated Damages. If Proprietor breaches paragraph 13 of this Agreement [providing for a ten-year term], the parties agree that it would be difficult to ascertain the exact damages of the Company and the parties agree that the Company shall be entitled to recover from the Proprietor as liquidated damages an amount equal to seventy percent (70%) of the net revenue (as determined in paragraph 5 above) from all Company Machines for the period from the date of the Agreement to the date of the breach, divided by the number of months from the date of this Agreement until the breach, multiplied by the Company share of the net revenue as stated in paragraph 5, multiplied by the number of months remaining on the Term of Lease. The parties agree that this amount is a reasonable estimate of the damages likely to be incurred as a result of any breach and not as a penalty.

The Appellees sold the convenience store, and the new store owner removed the COAMs in 2013. Ultra alleged that the Appellees breached the COAM agreement and sought resolution before a GLC hearing officer pursuant to OCGA § 50-27-102 (d). Ultra sought unpaid revenue from the COAMs prior to the Appellees' sale of the store, and lost profits after the new owner removed the COAMs from the store from

2

the date of the sale until the end of the ten-year term. Ultra claimed $1,218,060.95 in liquidated damages and $1,602,683.49 in actual damages for its lost-profits claim.

The hearing officer awarded $108,801 for the underpayment of revenue while the COAMs were still at the store. However, the hearing officer declined to award Ultra damages in the post-removal period based on his findings that the liquidated damages provision was unenforceable and that Ultra had failed to prove its lost profits with reasonable certainty. The hearing officer was "particularly troubled" by Ultra's inability to report whether the COAMs had been re-rented. The hearing officer acknowledged the risk of awarding Ultra a double recovery, and found that Ultra's lost profits were speculative without this "critical fact[.]"

Ultra appealed the decision to the chief executive officer of the GLC pursuant to OCGA § 50-27-102 (d) (5). The chief executive officer failed to render a decision within 30 days, and thus, pursuant to GLC RU 13.2.5 (1) (b) (4),[1] affirmed the decision of the hearing officer. Ultra filed a petition for judicial review to the superior court under OCGA § 50-27-102 (d) (5), and the superior court affirmed the GLC's decision. This appeal followed.

---

[1] See https://www.gacoam.com/API/Documents/Document?documentID=255 (last visited October 9, 2020).

In reviewing the decision of the chief executive officer of the GLC, the superior court "shall not reverse the chief executive officer's findings of fact unless it is against the weight of the evidence as set forth in [OCGA §] 5-5-21, and the chief executive officer's legal conclusions shall not be set aside unless there is an error of law."[2] "[W]hen this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative [body]."[3] With these guiding principles in mind, we now turn to Ultra's specific claims of error.

1. Ultra argues that the GLC hearing officer erred in finding that the liquidated damages provision in the parties' contract was an unenforceable penalty.

As an initial matter, Ultra contends that its liquidated damages claim should be analyzed under the Uniform Commercial Code ("UCC") framework, citing OCGA § 11-2A-504. However, Ultra has failed to show that it raised this argument before the hearing officer. Failure to raise this argument before the hearing officer waived

[2] See OCGA § 50-27-102 (d) (5).

[3] *Welcker v. Ga. Bd. of Examiners of Psychologists*, 340 Ga. App. 853, 855 (1) (798 SE2d 368) (2017) (citation and punctuation omitted).

4

judicial review.[4] Thus, we will analyze Ultra's liquidated damages claim under the non-UCC framework.

"If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby."[5] We apply a three-part test in determining whether a liquidated damages clause is enforceable:

> A contractual provision requiring payment of a stipulated sum by one of the parties upon termination or cancellation of the contract will be treated as an enforceable liquidated damages provision rather than an unenforceable penalty only if all three of the following factors are present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than a penalty; and third, the stipulated sum must be a reasonable pre-estimate of the probable loss resulting from such a breach.[6]

---

[4] See *Excelsior Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 322 Ga. App. 687, 693 (3) (745 SE2d 870) (2013).

[5] OCGA § 13-6-7.

[6] *Nat. Svc. Indus. v. Here to Serve Restaurants*, 304 Ga. App. 98, 99 (695 SE2d 669) (2010) (punctuation and footnote omitted).

5

"At trial, the party who defaults on the contract has the burden of proving the liquidated damages clause is an unenforceable penalty. A defaulting party can carry this burden by proving any of the three factors is lacking."[7] "The enforceability of a liquidated damages provision in a contract is a question of law for the court which necessarily requires the resolution of questions of fact."[8] "In close cases involving a liquidated damage clause, the [Georgia] Supreme Court has advocated interpreting the clause as a penalty."[9]

In this case, the hearing officer did not err in finding that the liquidated damages clause was not a reasonable pre-estimate of the probable loss resulting from a breach. As noted by the hearing officer, Ultra failed to show whether the COAMs had been re-rented, and the liquidated damages provision did not take this possibility into account. We have rejected liquidated damages clauses where the lessor received all future revenue and full possession of the property with the ability to re-rent or sell, because "[t]he liquidated damages placed the lessor in a far better position than it

---

[7] *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 192 (1) (612 SE2d 47) (2005) (citations omitted).

[8] Id. (citation and punctuation omitted).

[9] Id. at 195 (1).

would have been if the contract had never been breached."[10] "[B]oth possession of the [property] and a present lump sum award of future rent without any calculation of damages based on the future rental value of the [property], and the likelihood of reletting, provides [the lessor] with payment potentially bearing no reasonable relation to actual damages."[11]

2. Ultra argues that the hearing officer erred in finding that Ultra failed to prove its lost profits. Ultra claimed actual damages of $1,602,683.49 by calculating the average monthly revenue of the COAMs while the COAMs were still at the store, multiplying by the remaining number of months left in the contract, applying a present value discount, and subtracting $25,000 for the residual value of the five COAMs.

Generally, in determining contract damages, "the person injured, is, so far as it is possible to do so by a monetary award, to be placed in the position he would have

---

[10] *Caincare*, 272 Ga. App. at 193 (1) (citation omitted); accord *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755, 758-759 (2) (500 SE2d 638) (1998); *Peterson v. P. C. Towers*, 206 Ga. App. 591, 594 (3) (426 SE2d 243) (1992).

[11] *Peterson*, 206 Ga. App. at 594 (3).

7

been in had the contract been performed."[12] "Where property was leased for hire, the measure of damages for the lessee's breach of contract is the cash value of the contract less any saving which may accrue from the breach."[13] A party must show lost profits with "great specificity[,]"[14] "reasonable certainty[,]"[15] and with a "proven track record of profitability."[16] "Where appropriate action to mitigate the loss has not been taken, damages in the nature of lost profits are not recoverable."[17]

As noted above, Ultra failed to show whether the COAMs had been re-rented, despite testimony that Ultra kept records regarding this information. Accordingly,

---

[12] *Broadcast Concepts v. Optimus Financial Svcs.*, 274 Ga. App. 632, 635 (3) (618 SE2d 612) (2005) (citation and punctuation omitted).

[13] Id. (citation and punctuation omitted).

[14] *Bldg. Materials Wholesale v. Triad Drywall*, 287 Ga. App. 772, 776 (2) (653 SE2d 115) (2007) (punctuation and footnote omitted).

[15] Id. (punctuation and footnote omitted).

[16] *EZ Green Assocs. v. Ga.-Pacific Corp.*, 331 Ga. App. 183, 188 (2) (770 SE2d 273) (2015) (punctuation and footnote omitted).

[17] *Smith v. A. A. Wood & Son Co.*, 103 Ga. App. 802, 810 (2) (120 SE2d 800) (1961).

Ultra failed to account for "any saving which may [have] accrue[d] from the breach[,]"[18] and thus failed to prove its lost profits with reasonable certainty.[19]

Ultra contends that it is a "lost volume seller" that does not have a duty to mitigate its damages. In order for Ultra to show that it is a lost volume seller, it "must prove that even though it later resold the repudiated contract goods, the sale to the third party would have been made regardless of the buyer's breach so that the seller would have realized two profits from two sales."[20] The doctrine is based on UCC § 2-708 (2) (OCGA § 11-2-708 (2)).[21] We have only applied this doctrine in one case,

---

[18] *Broadcast Concepts*, 274 Ga. App. at 635 (3) (citation and punctuation omitted).

[19] See *Bldg. Materials*, 287 Ga. App. at 777 (2) (proof of lost profits insufficient where plaintiff failed to present evidence of expenses); *Smith*, 103 Ga. App. at 810 (2) (proof of lost profits insufficient where claimant failed to mitigate losses).

[20] *Unique Designs v. Pittard Machinery Co.*, 200 Ga. App. 647, 649 (1) (409 SE2d 241) (1991).

[21] See id. Under OCGA § 11-2-708 (2):

If the measure of damages provided in subsection (1) of this Code section is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (Code Section 11-2-710), due allowance for costs

9

where the buyer repudiated a contract for lathes.[22] In that case, the seller carried a large inventory of lathes, the lathe to be delivered to the buyer was a stock item not specially ordered, and the seller's subsequent sale of the lathes to another buyer would have occurred even if the original buyer had not repudiated the contract.[23]

Even assuming arguendo that the lost volume seller doctrine might apply in this case,[24] Ultra failed to present sufficient evidence before the hearing officer in order for the hearing officer to consider the doctrine's application. In the absence of information as to the whereabouts of the COAMs and whether they were re-rented, the hearing officer was unable to accurately determine whether mitigation was required and if so, to what extent.[25] Thus, because Ultra failed to present evidence

---

reasonably incurred and due credit for payments or proceeds of resale.

[22] See *Unique*, 200 Ga. App. at 649-650 (1).

[23] Id. at 650 (1).

[24] This case does not implicate OCGA § 11-2-708 (2), the UCC section from which the doctrine is based, because the COAM contract was not for the sale of goods. The corresponding provision for leased goods, OCGA § 11-2A-528 (2), is similar to OCGA § 11-2-708 (2), but we have no cases applying the doctrine based on OCGA § 11-2A-528 (2). Additionally, as noted in Division 1, supra, Ultra did not present its claims to the hearing officer under the UCC framework.

[25] Cf. *Unique*, 200 Ga. App. at 648-650 (1) (applying the lost volume seller doctrine when the seller immediately sold the contracted item to an alternate buyer, the seller had a large inventory, and the contracted item was stock with no

that would have allowed the hearing officer to calculate Ultra's lost profits with reasonable certainty, the hearing officer did not err in rejecting this argument.[26]

*Judgment affirmed. Barnes, P. J., and Colvin, J., concur.*

---

modifications).

[26] See *Bldg. Materials*, 287 Ga. App. at 777 (2).